# Richmond

## DOROTHY LOGAN v. MONTGOMERY WARD & CO., INCORPORATED.

December 1, 1975.

Record No. 741053.

Present, I'Anson, C.J., Carrico, Harrison, Cochran, and Poff, JJ.

S. W. Tucker (James W. Benton, Jr.; Hill, Tucker & Marsh, on brief), for plaintiff in error.

Thomas S. Word, Jr. (Rosewell Page, III; E. Duncan Getchell, Jr.; McGuire, Woods & Battle, on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

Dorothy Logan sought to recover a judgment for personal injuries and property damage allegedly suffered by her as a result of the ex-

plosion of a gas stove purchased from Montgomery Ward & Co., Incorporated, and installed by Bottled Gas Corporation of Virginia. Upon trial of the case, the lower court sustained motions to strike appellant's evidence and entered summary judgment for the defendants. Appellant has appealed as to Montgomery Ward only.

On August 29, 1969, the plaintiff purchased a new "Signature" gas range from Montgomery Ward at its retail outlet in Baltimore, Maryland. The stove was loaded on a truck by employees of Montgomery Ward and transported by members of appellant's family from Baltimore to her home in Brunswick County.

On September 2, 1969, Thomas S. Moseley, an employee of Bottled Gas Corporation, installed the stove at the request of Mrs. Logan. He located two propane gas fuel tanks outside the house and ran a copper tubing from the regulator on the tanks to a point under the kitchen and then into the house, connecting the tubing or line to the manifold located under one of the back burners on top of the range. Moseley testified that the stove was routinely and properly installed and that the necessary pressure checks were made to establish that there was no leak in the line or the stove.

After the installation Moseley showed appellant how to operate the stove, advising her that to activate the oven or one of the burners, she need only push and turn a knob and the indicated burner would be ignited by an automatic pilot light. The only controls accessible to her were five knobs, one controlling the oven burner and the others controlling the four top burners. Moseley said that when he left the Logan home there was no leak in the line, and the stove was operating properly.

Mrs. Logan testified that from the date of installation until September 21st she had no occasion to use and did not use the oven. Only the top burners were used during that period and without incident. On the morning of September 21st, appellant said that she heated some "pre-cooked rolls" in the oven; that she used the oven according to the directions which Mr. Moseley had given her; that she pushed the button in and turned the knob to 500°, or broil; that the oven came on, and she set the rolls in it; and that after they were brown she removed the rolls and turned the stove off, at which time "it said bloop". She said "didn't nothing blow up at that time. It just gave a noise, and I closed the door".

Mrs. Logan then served breakfast. She said that after her son had finished eating and gotten up from the table, she took the dishes off,

arranged the chairs around the table and went to wash the dishes. It was at this point the explosion occurred. She said, "All I know, I was in a big flame of fire." She said she "just heard something like a bam . . . it just sounded like somebody would hit something . . . it sounded like a hard hit against the wall or something of that sort. . ."

Mrs. Logan was engulfed in flames when rescued by her son. She was immediately taken to the Community Memorial Hospital in South Hill and, following emergency treatment for injuries and burns, was sent to Medical College of Virginia Hospital in Richmond. The kitchen, dining room and back porch of the house were consumed by the fire, and a portion of a bedroom was severely damaged. The broiler door of the stove was blown across the kitchen and embedded in a wall. The oven door was blown across the kitchen into a hallway some 24 feet from the stove. After the fire, the stove, refrigerator and other kitchen furniture were found "charred up and burned to pieces". According to the testimony, the stove, along with other debris, was carried to a public dump a few days after the fire.

There is evidence that a defect in the stove could cause gas to collect within it, and also that a defect in the gas line from the tanks to the stove could cause gas to collect in the stove. The only evidence that there was any leak in the stove or line, between the date of the stove's installation and the date of the explosion, is the testimony of Mrs. Logan that on the day prior to the explosion, a relative, who was sitting in her kitchen, said that he could smell gas. She said that she went to the stove, tried the knobs and found that "they were as far as they would go". She said that after she had checked the stove, she "didn't pay it any more attention because I still couldn't smell any gas".

The evidence establishes that there was an explosion and a resulting fire, and that the personal injuries and property damage sustained by Mrs. Logan were proximately caused thereby. In her brief, appellant says the question presented on appeal is:

"When the plaintiff has proved that, without intervening cause, an explosion occurred within the oven of the gas range following her initial use of the oven and that damage ensued, does the seller who warranted the fitness of the gas range have the burden of going forward with the evidence?"

Appellee poses the question to be:

"May a defect in a retail product be reasonably inferred merely from evidence of careful transportation, installation and use fol-

lowed by an unexplained accident so as to permit submission of the question of defect to a jury?"

Mrs. Logan's cause of action depends upon the existence of a defect in the stove at the time it left the control of Montgomery Ward. The standard of safety of goods imposed on the seller or manufacturer of a product is essentially the same whether the theory of liability is labeled warranty or negligence. The product must be fit for the ordinary purposes for which it is to be used. There was an implied warranty of merchantability that the stove was reasonably safe for its intended use. Under either the warranty theory or the negligence theory the plaintiff must show, (1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed when the goods left the defendant's hands. See *Turner* v. *Manning, Maxwell & Moore*, 216 Va. 245, 217 S. E. 2d 863 (1975), and *Chestnut* v. *Ford Motor Company*, 445 F. 2d 967, 968 n. 1 (4th Cir. 1971). The damaged stove, having been moved from the Logan premises, was never subjected to an examination by any expert knowledgeable in the manufacture, mechanical operation and installation of gas ranges. Without such examination, designed to elicit the cause of the explosion, and without the range itself, appellant was handicapped in her effort to prove, directly or inferentially, a case of negligence or breach of warranty.

The mere fact of an explosion does not establish the negligence of either the manufacturer or seller of the stove, and does not establish that the stove was defective. Explosions of gas ranges can be attributed to numerous causes, including the care with which the stove is operated and maintained by its owner. The testimony in the instant case disclosed that after a range is installed, its movement for any appreciable distance could loosen or disrupt the gas line and adjustments to it. Further, and notwithstanding the abandonment by appellant of her alleged cause of action against Bottled Gas, the installation of the stove might have been improperly and negligently done, thereby causing the explosion.

What caused the gas leak was not testified to by any witness. We can find nothing in the record which permits us to infer that under all the circumstances, the leak must have been caused by a defect in the oven unit of the range which existed when it was transferred from Montgomery Ward's possession to that of Mrs. Logan. While

there may be a suspicion that the explosion did occur because of such defect, we are unable to discover any proof of a defect, or any reason for a mechanical malfunction of the stove. Admittedly, gas ranges are common appliances that are sold daily to customers. It is common knowledge that normally these ranges are properly and safely manufactured, installed and operated without any malfunction or incident.[1] However, it is also known that occasionally there is a malfunction which cannot be attributed to negligence or breach of warranty by the manufacturer or seller, but rather is attributable solely to the negligence of the installer or the purchaser, or to some unknown cause. The evidence in the instant case fails to eliminate the possibility that the blame attaches to some party other than Montgomery Ward. Neither is the proof such that the existence of a defect in the stove is the only reasonable inference that can be drawn to explain the explosion.

The doctrine of *res ipsa loquitur* has no application to this case. It is an evidential presumption sometimes resorted to in the absence of evidence, but it is not to be applied when evidence is available. "The doctrine rests upon the assumption that the *thing* which causes the injury is under the exclusive management of the defendant, and the evidence of the true cause of the accident is accessible to the defendant and inaccessible to the person injured." *Peters* v. *Lynchburg Traction Co.*, 108 Va. 333, 336, 61 S. E. 745, 746 (1908). *See also Richmond* v. *Hood Rubber Products Co.*, 168 Va. 11, 190 S. E. 95 (1937) and *Seven-Up Bottling Co.* v. *Gretes*, 182 Va. 138, 27 S. E. 2d 925 (1943). And in *Pepsi-Cola* v. *Yeatts*, 207 Va. 534, 538, 151 S. E. 2d 400, 403 (1966), we said, referring to the doctrine: "It does not apply in the case of an unexplained accident which may have been attributable to one of several causes, for some of which the defendant is not responsible."

Among the cases cited by appellant are *Chestnut* v. *Ford Motor Company, supra; Kridler* v. *Ford Motor Company*, 422 F. 2d 1182 (3rd Cir. 1970); and *Franks* v. *National Dairy Products Corporation*, 414 F. 2d 682 (5th Cir. 1969). However, in each of these cases the evidence of a defect in the product was sufficient to support a jury determination. In the instant case Mrs. Logan did not produce the proper degree of proof.

---

[1] Of some interest in this products liability case is the fact that Mrs. Logan replaced the damaged stove with another new Signature gas range of the same type which she also purchased from Montgomery Ward and which she also had installed by Bottled Gas.

In *Shramek* v. *General Motors Corp.*, 69 Ill. App. 2d 72, 216 N. E. 2d 244 (1966), the plaintiff claimed a breach of implied warranty and, alternatively, negligence in the design and manufacture of an automobile tire. The court held that the mere fact of a blowout of an automobile tire did not demonstrate negligence of the tire manufacturer or tend to establish that the tire was defective. It observed that such blowouts could be attributed to myriad causes. The court said:

> "Plaintiff contends, however, that although he does not have the tire, nor any expert testimony as to the cause of its blowing out, he should be allowed to take his case to the jury. We disagree. On such a record, a jury would have no basis to determine whether the tire was defective when it left defendants' control and whether that defect ultimately caused plaintiff's injuries. Under such circumstances, it is manifest that plaintiff did not raise genuine issues of fact as to these material elements of his case.
>
> "The requirement that plaintiff prove the essential elements of his case has also been recognized in warranty cases." 69 Ill.App. 2d at 80, 216 N. E. 2d at 248.

The facts in *Thompson* v. *Trane Company*, 500 P. 2d 1329 (Okl. 1972), are strikingly similar to the facts in the instant case. There an action was brought for damages based on a claim that a gas heating unit was defective when transferred from manufacturer (Trane) to seller (Standard) and thereafter installed in plaintiffs' home. The home was subsequently damaged by a fire, the origin of which was traced to a leak in the unit. The fire marshall testified that the fire originated from a gas leak in, or in close proximity to, a regulator or control valve inside the unit; that the leak ignited and somehow the control valve, or a portion of it, melted; and that when it had sufficiently melted so that the gas supply pipe was no longer connected in the enclosed piping system of the furnace, the raw gas coming from the supply pipe ignited and created a "blowtorch" effect, which in turn caused the fire damage to the house.

The defect which the plaintiffs depended upon to establish their cause for damage against the manufacturer and the seller was the gas leak described by the fire marshall. However, the court found:

> "What caused this leak was not testified to by any witness. We are asked to infer that under all of the circumstances the leak must have

been in the unit when it was transferred from Trane's possession to Standard.

\* \* \* \* \*

"In this case there was no competent evidence introduced from which it could be reasonably inferred that the furnace was defective when it was transferred from the manufacturer to the retailer or even when it was installed by the latter in the plaintiffs' home. Even if we assume the evidence was sufficient to demonstrate that the fire was caused by a leak in the furnace, the evidence did not disclose *when* the leak occurred or as to the *cause* of it. . . ." 500 P. 2d at 1331-32.

Dean Page Keeton, writing in the *Virginia Law Review*, noted that in recent years evidence more and more circumstantial has been deemed sufficient to establish negligence on the part of the defendant. However, he further said:

"Even so, liability in most situations still depends on negligence, and, moreover, some of the problems involved in proving negligence are very much the same as those related to proof of a defect in a product that will constitute the basis for a finding of breach of an implied warranty. The principal obstacle to recovery, generally speaking, on a negligence theory is not the substantive law as to duty or causation but the unavailability of sufficient evidence of negligence to have the case submitted to the jury." (footnote omitted) Keeton, Products Liability—*Proof of the Manufacturer's Negligence*, 49 Va. L. Rev. 675, 676 (1963).

The lower court found:

"[T]he evidence is insufficient as to the manufacturer, Montgomery Ward, to establish a prima facie case that there was a defect in the stove or a breach of the implied warranty at the time that the stove left the hands of the defendant in Baltimore."

We cannot say its finding is plainly wrong. Accordingly, the judgment is

*Affirmed.*