**Mary Louise HUTTO, Plaintiff,**

v.

**BIC CORPORATION, Defendant.**

**Civ. A. No. 91–644–N.**

United States District Court,
E.D. Virginia,
Norfolk Division.

Aug. 7, 1992.

Thomas J. Harlan, Jr., Thomas J. Harlan, Jr. and Associates, Norfolk, Va., John R. Overchuck, Overchuck, Langa & Crews, Orlando, Fla., for plaintiff.

John E. Fisher, Frank M. Palmour, Fisher, Rushmer, Werrenrath, Keiner, Wack & Dickson, P.A., Orlando, Fla., William H. Robinson, Jr., Charles M. Allen, Jr., Wright, Robinson, McCammon, Osthimer & Tatum, Richmond, Va., for defendant.

## OPINION AND ORDER

### Procedural History

MORGAN, District Judge.

On October 7, 1991, BIC Corporation (hereafter "DEFENDANT" or "BIC") removed to this court a suit filed in the Circuit Court for the City of Norfolk against it and three other defendants by Mary Louise Hutto (hereafter "PLAINTIFF" or "HUTTO").[1] In this suit, plaintiff alleges that BIC was negligent in "developing, designing, marketing, producing, manufacturing, distributing, selling and placing into the stream of commerce" the lighter which plaintiff alleges to have exploded and caused her to suffer severe burns over the top portion of her body (Count I) and in failing to warn that the subject lighter was dangerous (Count II);

---

**1.** By Order of March 31, 1992, original defendant Maidenform, Inc. was dismissed with prejudice; by Order of April 29, 1992, original defendants BP Oil Co. and John Doe, Clothing Manufacturers, Distributors and Wholesalers were dismissed with prejudice, leaving BIC as the sole defendant.

that BIC breached express and implied warranties that the subject lighter was of merchantable quality and fit and safe for its intended purpose and use (Count III); that the subject lighter was an inherently dangerous product (Count IV); that BIC's advertising representations that it was safe to "Flick their BIC" were false and misleading (Count V); and that BIC was grossly negligent because it knew the subject lighter had dangerous and defective proclivities and it continued to use the same dangerous design (Count VI). Plaintiff seeks reimbursement for medical expenses, compensatory and punitive damages.

On April 7, 1992, BIC moved for summary judgment on all of plaintiff's claims on the basis that she could not prove the existence, nature or source of any defect in the subject lighter. BIC also moved to strike plaintiff's claim for punitive damages on the aforementioned grounds and, alternatively, on the grounds that Virginia's scheme for awarding such damages is unconstitutional. On April 24, 1992, BIC moved this court for partial summary judgment with regard to plaintiff's claim for the expense of her care and treatment, arguing that plaintiff has no such claim under Virginia law. In addition, BIC also moved for the exclusion of an affidavit from a United States representative concerning the amount of medical expenses paid on plaintiff's behalf by the United States under the Civilian Health and Medical Program for the Uniformed Services (hereafter "CHAMPUS") on the grounds that the affidavit is inadmissible hearsay.

The parties have filed extensive briefs and exhibits in support of and in opposition to the aforementioned motions; a hearing was held before the undersigned on May 28, 1992, at which time Thomas J. Harlan, Jr., Esq. and Joseph T. McFadden, Jr., Esq. appeared on behalf of plaintiff and William H. Robinson, Jr., Esq., Charles M. Allen, Jr., Esq. and Frank M. Palmour, Esq. appeared on behalf of defendant.

### Facts

On March 26, 1984, Mary Louise Hutto, age thirteen (13), was asked by her brother, Charles Edmund, to retrieve his BIC Mod II disposable cigarette lighter from the dresser of his bedroom in their family home in Norfolk. Plaintiff's brother had had this lighter for two (2) or three (3) days and, at that point, had used it ten (10) to fifteen (15) times without incident. After retrieving the lighter, plaintiff began to walk toward the bedroom door and flicked the lighter to check it. At that time, plaintiff was holding the lighter approximately one (1) foot from her body. Plaintiff then saw a glow and tried to put the fire out. As a result of this incident, plaintiff suffered severe burns over her upper body.

After the accident, Edmund found the lighter in several pieces on the floor of his bedroom. The spindle and windscreen were next to the dresser and were not attached to the plastic lighter body. The tabs which hold the spindle in place were charred and there was a linear crack or discoloration like bent plastic in the plastic lighter body. Edmund discarded all of these items immediately after the accident.

### Standard for Summary Judgment

As a threshold matter, summary judgment is appropriate only if, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine issue as to any material fact. The party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial. Further, the movant need not negate his opponent's case; he need only disclose the absence of evidence to support that case. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); and *White v. Federal Express Corporation,* 729 F.Supp. 1536, 1553–1554 (E.D.Va.1990). With these standards in mind, then, the Court now focuses separately on the merits of the various claims.

### Discussion

#### I. BIC's April 7, 1992 Motion

#### A. Summary Judgment

In its April 7, 1992 motion for summary judgment, BIC contends that there are no

material issues of fact and that it is entitled to judgment as a matter of law because all of plaintiff's claims depend upon there being some type of defect caused by BIC in the subject lighter and, in response to the summary judgment motion, plaintiff has failed to produce any evidence of the existence, source, or nature of any defect in the subject lighter. In addition, at the hearing of May 28, 1992, BIC further refined its argument. There, BIC attempted to differentiate between "design" defects and "manufacturing" defects under Virginia law, arguing that plaintiff could not prove a manufacturing defect because there was no product for plaintiff's expert to examine and that plaintiff could not prove a design defect because her expert could do no more than speculate about what design defect, if any, existed in the subject lighter.[2]

In response to the defendant's motion, plaintiff asserts that the testimony of her expert, Dr. Leighton E. Sissom, provides evidence of a defect in the subject lighter sufficient to create a genuine issue of material fact. Moreover, at the hearing, plaintiff took the position that the defect in the subject lighter is not amenable to being labeled a "manufacturing" defect or a "design" defect, but that it is merely a "defect".[3]

■■■ At the time the Court heard oral argument on BIC's motions, the trial date was fast approaching and the Court wanted to give the parties some guidance with regard to trial preparation. To that end, it apprised the parties that the affidavit and deposition excerpts of Dr. Sissoms created a genuine issue of material fact on, at least, the issue of a design defect in the subject lighter. The Court specifically took under advisement, however, the issue of whether it is necessary to distinguish between "manufacturing" and "design" defects. After considering the record in this case, the arguments of the parties and the pertinent law, the Court concludes that, at this point in the proceeding, it should not make a distinction between "design" and "manufacturing" defects.[4]

■■■ In *Logan v. Montgomery Ward & Company*, 216 Va. 425, 219 S.E.2d 685 (1975), the Supreme Court of Virginia held that the mere fact that a gas stove leaked and exploded was insufficient to prove negligence on the part of either the manufacturer or seller of the stove, and further, that such evidence did not establish that the stove was defective. In *Logan*, however, there was no testimony by any witness, expert or otherwise, concerning the cause of the gas leak. In essence, there was no proof in the record before the court of a defect or any other reason why the stove should explode. Nowhere in *Logan* does the court require the plaintiff to differentiate her proof between manufacturing or

---

**2.** The following colloquy took place between the Court and counsel for BIC:

"THE COURT: Are you telling me now that you want the Court to try to separate your motion and apply it, if the Court deems it appropriate, to certain counts and not to others?

"MR. ROBINSON: Our motion goes to the entire complaint and to both counts.

"It may be that the Court, if appropriate, would find summary judgment applicable to, for example, manufacturing defect claims but not to design defect claims, or perhaps to both."

(Transcript of 5/28/92 Hearing at Pp. 9–10)

**3.** With regard to this point, the following exchange took place between the Court and counsel for the plaintiff:

"THE COURT: Well, I'm trying to draw a distinction here that the defense is trying to draw between design defect and a manufacturing defect. And are you saying that that distinction doesn't make any difference?

"MR. HARLAN: I'm saying that it doesn't make any difference. The defect is that the lighter leaks...."

(Transcript of 5/28/92 Hearing, P. 46)

**4.** *But see,* Spahn and Draim, *Virginia Products Liability,* §§ 3–1 and 4–1, noting that there are several distinctions between a design defect claim and a manufacturing defect claim.

Under either the warranty theory or the negligence theory, the plaintiff must show: 1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and 2) that the unreasonably dangerous condition existed when the goods left the defendant's hands. *See Turner v. Manning, Maxwell & Moore, Inc.,* 217 S.E.2d 863 (1975), and *Chestnut v. Ford Motor Co.,* 445 F.2d 967, 968 n. 1 (4th Cir.1971). The following discussion, therefore, is applicable to both plaintiff's negligence and warranty counts.

design defect. The court merely requires that plaintiff produce evidence that the gas leak which caused the explosion was the defendant's fault. Hutto, in the present case, has met this burden through the affidavit of her expert, Dr. Sissom.

Dr. Sissom unequivocally states in his affidavit that the defect in the subject lighter is its failure to seal. Whether this defect is the result of a "design" defect or a "manufacturing" defect may not be material; what is material is that there is evidence that the cause of this defect is either BIC's design of the lighter or its manufacture of the lighter. In the case of a defect caused by either source, plaintiff has met its burden of producing *prima facie* evidence that the subject lighter was dangerous when it left BIC's hands. *Turner,* infra, and *Chestnut,* infra.

### B. Punitive Damages

■ In light of the Court's determination that plaintiff has introduced *prima facie* evidence that BIC's alleged misconduct is a proximate cause of the explosion which injured her, the Court finds it is premature to attempt to determine whether plaintiff's evidence in support of her claim for punitive damages is sufficient; plaintiff's discovery is still incomplete and has been extended, with limitations, to August 27, 1992.

■ As for defendant's alternative argument that Virginia's scheme for awarding punitive damages violates the Due Process Clause of the United States Constitution, as well as the Due Process Clause of the Virginia Constitution, this Court will examine the issue of whether punitive damages can be constitutionally awarded in Virginia in light of the principles set forth in the Supreme Court's decision in *Pacific Mutual Life Insurance Co. v. Haslip,* —— U.S. ——, 111 S.Ct. 1032, 113 L.Ed.2d 1 (1991) and the Fourth Circuit's decision in *Johnson v. Hugo's Skateway,* 949 F.2d 1338 (4th Cir.1991) only if and when the plaintiff is able to establish prima facie evidence of a basis for same.

### II. BIC's April 24, 1992 Motion
### A. Partial Summary Judgment

In its April 24, 1992 motion for partial summary judgment, BIC asserts that it is entitled to partial summary judgment foreclosing plaintiff from recovering for the expense of her care and treatment resulting from her injuries. More specifically, BIC argues that plaintiff does not even have a cause of action for such expenses under Virginia law as stated in Va.Code § 8.01–36 [5] and *Moses v. Akers,* 203 Va. 130, 122 S.E.2d 864 (1961). Plaintiff, on the other hand, argues that she has a cause of action for such expenses under *Moses* and Va.Code § 8.01–37.1.[6]

---

**5.** § 8.01–36 provides in pertinent part:
"Where there is pending any action by an infant plaintiff against a tortfeasor for a personal injury, any parent, or guardian of such infant, who is entitled to recover from the same tortfeasor the expenses of curing or attempting to cure such infant from the result of such personal injury, may bring an action against such tortfeasor for such expenses, in the same court where such infant's case is pending, either in the action filed in behalf of the infant or in a separate action...."

**6.** § 8.01–37.1 provides:
"Whenever any person sustains personal injuries caused by the alleged negligence of another, and a claim against any person alleged to be liable is created in favor of the United States under federal law (42 U.S.C. § 2651 *et seq.*) for the reasonable value of medical, surgical or dental care and treatment provided, the injured party may, on behalf of the United States, claim the reasonable value of the medical services

provided as an element of damages in a civil action against the person alleged to be liable. It shall not be required that the United States intervene in the action or be made a party in order to establish its claim. A sworn written statement of the authorized representative of the department or agency providing such services prepared in accordance with the regulations promulgated pursuant to 42 U.S.C. § 2652 shall be admissible as evidence of the reasonable value of the care and treatment provided."

42 U.S.C. § 2651 provides, in pertinent part:
"In any case in which the United States is authorized or required by law to furnish hospital, medical, surgical, or dental care and treatment ... to a person who is injured ... under circumstances creating a tort liability upon some third person ... to pay damages therefor, the United States shall have a right to recover from said third person the reasonable value of the care and treatment so furnished or to be furnished and shall, as to this right, be subrogated to any right or claim that the injured person

■ In Virginia, two causes of action accrue when tortious injury is inflicted upon an infant.[7] One cause of action accrues on behalf of the child for the injuries themselves and another cause of action accrues on behalf of the parent or guardian which includes the expenses of curing or attempting to cure the infant from the results of any injuries. Under this scheme, the parent's cause of action is primary since an infant is generally not contractually liable for medical expenses due to her infancy. An infant, therefore, has no right to recover for medical expenses unless her status falls under one of the exceptions enumerated by the Supreme Court of Virginia in *Moses*.[8]

■ In *Moses*, four (4) exceptions to the rule that a parent's cause of action for medical expenses is primary were enunciated. An infant, therefore, may not recover medical expenses from a tortfeasor unless: 1) she has paid or agreed to pay the expenses; 2) she alone is responsible for payment by reason of emancipation or the death or incompetency of her parents; 3) the parent has waived the right of recovery in favor of the infant; or 4) recovery of the expense is permitted by statute. *Moses*, 122 S.E.2d at 866.

Defendant argues that plaintiff cannot fit within any of the *Moses* exceptions and that, accordingly, she has no claim for medical expenses. Plaintiff disagrees, arguing both that her parents have assigned her their claim for medical expenses they actually paid and that Va.Code § 8.01–37.1 creates in plaintiff a right to recover for medical expenses which the United States has paid on her behalf and for which it has asserted a claim.

■ While the Court will assume for the sake of this opinion that plaintiff's parents made an effective assignment of the medical expenses they incurred on behalf of plaintiff,[9] the Court concludes that such an assignment may not prevent the statute of limitations from running on the parent's claim for medical expenses. To allow an assignment of a claim from an adult to an infant to somehow extend the statute of limitations (in this case by tolling) defeats the purpose of a limitations period. The Legislature of Virginia has expressly stated that a five (5) year statute of limitations applies to a parent's claim for medical expenses caused by tortious injury to an infant. This Court must respect and give effect to this legislative determination.

■ The parent's cause of action for medical expenses accrued at the time they became liable to pay plaintiff's medical bills. *See Watson v. Daniel*, 165 Va. 564, 183 S.E. 183, 185 (1935). A parent's claim for medical expenses under Va.Code § 8.01–243(B) is not tolled by the provisions of Va.Code § 8.01–229(A) *Perez by Perez v. Espinola*, 749 F.Supp. 732, 733 (E.D.Va. 1990). It appears from the record that the parent's claim for a portion of plaintiff's total medical expenses accrued on March 26, 1984, and expired on March 27, 1989. Any claim by plaintiff for such medical expenses is barred by the five (5) year statute of limitations in § 8.01–243(B) of the Virginia Code since the infant-assignee

... has against such third person to the extent of the reasonable value of the care and treatment so furnished or to be furnished...."

Plaintiff may also have a cause of action for medical expenses to be incurred after her majority or emancipation, but there appears to be no claim asserted for same.

7. The infant's claim for the reasonable value of medical services provided by the United States may be considered a third cause of action in appropriate cases.

8. In any event, the two actions are governed by different statutes of limitation. The child's personal injury cause of action is subject to the two (2) year limitation of Va.Code § 8.01–243.A.

Va.Code § 8.01–229.A.1 allows an infant to postpone bringing suit until she attains the age of majority, after which she has two years to bring her action. Va.Code § 8.01–243.B gives a parent or guardian five years to bring the claim for medical expenses; it does not include any tolling provision.

9. At the hearing of May 28, 1992, it was represented to the Court that plaintiff's parents made a written assignment of their claim for medical expenses. Transcript of 5/28/92 Hearing, Pp. 99–101. After the hearing, plaintiff filed a copy of this assignment with the Court. It appears from this copy that plaintiff's natural mother, Mary Edmunds, assigned her claim for medical expenses to plaintiff on February 21, 1992.

stands in the shoes of her parent-assignor. *Fidelity & Casualty Co. of New York v. First National Exchange Bank of Virginia*, 213 Va. 531, 193 S.E.2d 678, 684 (1973).[10]

 As for plaintiff's claim that Va. Code § 8.01–37.1 creates a right in plaintiff to claim the reasonable value of the medical expenses provided by the United States as an element of damages in this action, the Court must agree that she can. Neither the parties nor the Court have been able to uncover any legislative history or precedent concerning the origins of, and rationale behind § 8.01–37.1. "While in the construction of statutes the constant endeavor of the courts is to ascertain and give effect to the intention of the legislature, that intention must be gathered from the words used, unless a literal construction would involve a manifest absurdity. Where the legislature has used words of a plain and definite import the courts cannot put upon them a construction which amounts to holding the legislature did not mean what it has actually expressed." *Turner v. Wexler*, 244 Va. 124, 418 S.E.2d 886, 887 (1992). The language of the statute clearly says that "the injured party may on behalf of the United States claim the reasonable value of the medical services provided as an element of damages in a civil action against the person alleged to be liable." This language does not create a "manifest absurdity." The statute does not distinguish between injured infants and injured adults as it uses the term "injured persons." In addition, when coupled with the provision in *Moses* which specifically allows an infant to recover expenses permitted by statute, the present action is authorized by the complementary terms of both the statute and the exception in *Moses*.[11]

### B. Exclusion of Evidence

The Court expressly makes no ruling upon the admissibility or sufficiency of the letter dated March 31, 1992 of John Payne regarding the amount and the reasonable value of the medical services provided by the United States. This decision is better reserved for the Trial Judge, who will have the benefit of hearing all the evidence upon the issue.

### Conclusion

BIC's April 7, 1992 motion for summary judgment is DENIED. BIC's April 24, 1992 motion for partial summary judgment is DENIED as to the claim for medical expenses represented by the United States' lien and the Court reserves its ruling as to the medical expenses claim of the parents allegedly assigned to the plaintiff and GRANTS BIC the right to amend its pleadings to set forth the statute of limitations defense to the assigned claim.

The Clerk is directed to mail a copy of this Opinion and Order to all counsel of record.

It is so ORDERED.

---

**10.** Although the statute of limitations is an affirmative defense which must be set forth in a pleading, Fed.R.Civ.P. 8(b), the Court will allow BIC to amend since this claim was not specifically pleaded by the plaintiff in her motion for judgment.

**11.** BIC maintains that the United States claim under 42 U.S.C. § 2651 is barred by any statute of limitations the Court applies. The United States, however, is not before the Court in this action. Only the claims of plaintiff and her parents for medical expenses are presently before the Court. The Court, therefore, makes no decision regarding the possibility of the statute of limitations defense being asserted by BIC were the United States to file a separate action; nor does the Court consider that the plaintiff is subject to this defense as the assignee of the United States since a statute, as opposed to an assignment, gives the plaintiff this claim.