52 F.3d 320
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Phillip DAVIS, III, Plaintiff-Appellant,
v.
HEBDEN, SCHILBE AND SMITH, INCORPORATED, a Foreign
Corporation, Defendant-Appellee,
and
HARBERT-YEARGIN, INCORPORATED, formerly known as Yeargin,
Incorporated and as Yeargin Construction Company,
Incorporated, Defendant.
 No. 94-1482.
 United States Court of Appeals, Fourth Circuit.
 Argued Jan. 31, 1995.
Decided April 20, 1995.
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Newport News. James E. Bradberry, Magistrate Judge. (CA-93-105-4)
 ARGUED: Paul Elton Turner, Jr., Newport News, VA, for appellant. James A. Gorry, III, Taylor & Walker, P.C., Norfolk, VA, for appellee. ON BRIEF: Peter C. Manson, Jr., Taylor & Walker, P.C., Norfolk, VA, for appellee.
 E.D.Va.
 AFFIRMED.
 Before HAMILTON and LUTTIG, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Phillip Davis, III, sued Hebden, Schilbe and Smith, Inc., in the district court for negligence and breach of warranty. The magistrate judge entered judgment on a jury verdict in favor of Hebden. We affirm.
 
 
 2
 * Dominion Terminal Associates (DTA), a consortium of coal mining companies, operated a coal depot in Newport News, Virginia. Hebden designed and manufactured a conveyor for a coal sampling system at the depot. Davis was an employee of Commercial Testing and Engineering (CTE), which contracted with DTA to monitor and operate the coal sampling system.
 
 
 3
 Davis climbed onto the Hebden conveyor to investigate a possible source of coal spillage. He did not shut down the conveyor to inspect it. Davis slipped and caught his right hand in the conveyor in the area of the head pulley, which severed his right arm.
 
 II
 
 4
 Davis assigns several errors to the magistrate judge's rulings before and during trial.
 
 
 5
 Before trial, Hebden filed a motion to prevent Davis from introducing evidence that Hebden had violated certain standards of the Occupational Safety and Health Administration in the construction of the conveyor. Davis claims that the court erred by prohibiting him from introducing evidence of OSHA violations at trial, either through his expert witness or through the deposition testimony of Hebden employees.
 
 
 6
 Davis mischaracterizes the court's ruling. At the motion hearing the court stated that evidence of OSHA violations would not be admissible to show that Hebden had negligently designed the conveyor. The court went on to rule, however, that evidence of OSHA standards would be admissible as relevant to the standard of care if Davis could show one of two circumstances: (1) that Hebden had agreed to design the conveyor in compliance with specific OSHA standards; or (2) that industry standards adopted by OSHA supplied the design standards for the conveyor.
 
 
 7
 The court informed counsel that they would have the opportunity to talk to their expert witnesses during trial. The court also struck the OSHA-related deposition testimony of Mr. Robert Nagy, a Hebden employee.
 
 
 8
 At trial Davis failed to raise any issues relating to OSHA standards or regulations. He did not question Hebden representatives or his own expert witness about specific OSHA regulations, whether contained in the purchase order for the conveyor or in relation to industry design standards.
 
 
 9
 Davis relies on Albrecht v. Baltimore & Ohio R.R. Co., 808 F.2d 329 (4th Cir.1987), for the proposition that evidence of OSHA violations is relevant to negligence in product design. His reliance is misplaced. Albrecht was an employee's action against his employer under the Federal Employers' Liability Act. We held that OSHA regulations, while not proof of negligence per se, may "provide evidence of the standard of care exacted of employers." 808 F.2d at 332. OSHA regulations are not relevant to the liability of a manufacturer to an employee of an industrial consumer. See Minichello v. U.S. Industries, Inc., 756 F.2d 26, 29 (6th Cir.1985). Davis was not Hebden's employee when the accident occurred. The trial court properly limited the scope of admissible OSHA evidence.
 
 III
 
 10
 Davis next argues that the court should not have admitted into evidence two safety manuals written by DTA and CTE. He claims the manuals, which contained information about the risks involved in operating a conveyor, were irrelevant because he was not aware of them before the accident occurred, and because the knowledge of DTA and CTE may not be imputed to him.
 
 
 11
 The court correctly ruled that the manuals were relevant to the issue of Davis's contributory negligence or assumption of the risk. The manuals were in the drawer of a desk in the same room in which the accident occurred. Davis's argument that he did not know of the manuals affected their probative weight, not their admissibility.
 
 IV
 
 12
 Davis's expert witness testified that the Hebden conveyor was defectively designed because Hebden failed to guard against coal spillage from another, unrelated conveyor located above the Hebden conveyor. Hebden's president, Mr. Paul Riederer, testified on cross-examination that coal leaked from the overhead conveyor. The court disallowed all testimony relating to the coal spillage, ruling that spillage from the unrelated conveyor was irrelevant to whether Hebden's conveyor had been negligently designed. Davis argues that problems with the Hebden conveyor because of coal spillage from the overhead conveyor were foreseeable to Hebden and therefore relevant to his claim of defective design.
 
 
 13
 To establish liability under a theory of negligent design or breach of warranty, Davis had to show that: (1) the Hebden conveyor was unreasonably dangerous for its intended use or any reasonably foreseeable use; and (2) the unreasonably dangerous condition existed when the conveyor left Hebden's control. Logan v. Montgomery Ward & Co., 219 S.E.2d 685, 687, 216 Va. 425, 428 (1975).
 
 
 14
 Trial courts have broad discretion to limit expert testimony. United States v. Portsmouth Paving Corp., 694 F.2d 312, 323 (4th Cir.1982). The court properly focused the inquiry on whether the Hebden conveyor was negligently designed. Hebden designed and manufactured one coal conveyor, not the entire coal sampling system. It was not responsible for spillage from the overhead conveyor, which it did not manufacture.
 
 V
 
 15
 Davis objected to several of the court's rulings concerning jury instructions.
 
 
 16
 The court instructed the jury on the defense of misuse based on evidence that a cover had been removed from the conveyor's skirtboard shortly after its delivery to DTA. Davis protests that there was no evidence either that he knew about the removal of the cover or that such removal was the proximate cause of his injuries.
 
 
 17
 Evidence presented at trial suggested that DTA employees knew climbing on the conveyor while it was running was dangerous, and that the removal of the skirtboard cover affected Davis's path of descent from the conveyor on the day of the accident. The court properly submitted the issue of misuse to the jury. Moreover, contrary to Davis's contention, the misuse instruction was a correct statement of the law. See Featherall v. Firestone Tire & Rubber Co., 252 S.E.2d 358, 366-67, 219 Va. 949, 963-64 (1979) (manufacturer not responsible for harm resulting from unforeseeable misuse of product).
 
 
 18
 Davis next claims the court erred by refusing to instruct the jury on a manufacturer's duty to warn. We agree with the magistrate judge that Hebden had, as a matter of law, no duty to warn potential users of the open and obvious hazards of the moving conveyor belt that injured Davis. See Featherall, 252 S.E.2d at 366-67, 219 Va. at 962 (adopting Restatement (Second) of Torts Sec. 388).
 
 
 19
 Davis maintains that the court erroneously instructed the jury that in order to prevail on his breach of warranty claim, a plaintiff must show a breach of a warranty "owed to the plaintiff." He argues that the inclusion of the quoted language introduced the issue of privity to the jury, which might have misled or confused them.
 
 
 20
 The instruction did not add an element to the requirements of Davis's claim. The court did not instruct, and Hebden did not argue, that Davis must prove privity. The warranty was in fact owed to Davis, for he was "a person whom the manufacturer ... might reasonably have expected to use" the machine. Va.Code Ann. Sec. 8.2-318 (abolishing privity requirement in breach of warranty actions). The quoted language did nothing more than describe the warranty that Davis had to show was breached.
 
 AFFIRMED