**Lee Hamilton BOLLING, Plaintiff,**

v.

**MONTGOMERY WARD & CO., INCORPORATED, Defendant.**

**No. 96–0005–A.**

United States District Court, W.D. Virginia, Abingdon Division.

June 19, 1996.

235

Timothy W. McAfee, Charles Lee Bledsoe, Big Stone Gap, VA, Edison Banks, Whitesburg, KY, for Plaintiff.

K. Jeff Luethke, S. Morris Hadden, James L. Humphreys, Kingsport, TN, for Defendant.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

In this personal injury action premised upon the alleged negligent installation of a

radiator hose, defendant Montgomery Ward & Co., Inc. ("Montgomery Ward") moves for summary judgment. The motion is granted.

## ANALYSIS

Plaintiff Lee Bolling ("Bolling") alleges that employees of Montgomery Ward negligently installed a radiator hose into a truck in which he was a passenger. Radiator hoses come in a wide variety of configurations. The one in question here had a 90-degree bend at one end and a 20-degree bend at the other. The hose was designed to be attached to two fixed attachment points, one at the radiator and one at the water pump. Bolling asserts that the hose was installed backwards, which if true would undisputedly be negligent and dangerous. As a result of this improper installation, Bolling contends, the hose failed to perform its function, causing the truck to overheat. When Bolling investigated the situation, the hose detached itself from one of its attachment points, scalding him with hot radiator fluid. The truck, owned by Wayne Fleming, who is not a party to this case, was sold several months after the incident with the hose still attached. Neither the truck nor the hose are now available for inspection by any party, and neither has been inspected by any expert witness.

Montgomery Ward now moves for summary judgment on the ground of the plaintiff's spoliation of the evidence. Montgomery Ward argues that Fleming, Bolling's father-in-law, was aware that the truck and hose would be a subject of litigation, and nevertheless sold the truck without making any attempt to preserve the evidence for inspection.

■ Before turning to the law of spoliated or otherwise unavailable evidence, the court must determine whether the absence of the hose and truck is in fact relevant to the determination of negligence. Bolling argues that it is not, since no defect in the hose is asserted, and since, he claims, the evidence is undisputed that the hose was improperly installed. Bolling testified in his deposition that he had to reverse the hose to install it properly after it came loose and scalded him. Bolling Depo. at 44. He also points to the deposition testimony of the installer, Christopher Davis ("Davis"), who stated that he attached the end of the hose that was bent at a 90-degree angle to the radiator. Davis Depo. at 44. It is undisputed that the 90-degree end of the hose should go to the water pump, and the 20-degree end to the radiator. Nevertheless, the evidence is far from clear as to whether Davis in fact installed the hose backwards. The deposition took place almost fifteen months after the installation, and so Davis's recollection of which end attached to which part of the truck is suspect. This recollection is particularly questionable in light of the deposition testimony of both Montgomery Ward installers deposed and of plaintiff's expert Johnny Murray that a radiator hose such as the one in dispute cannot be installed backwards.[1] In light of

---

1. Davis testified as follows:

Q How did you go about installing it? Just walk me through, pretend I don't know what a hose is, what a radiator is, just as best as you can explain what you did with this hose to install it.

A Slip one end on the radiator and slip the other end up on the water pump. I mean they only go on one way. You can't put the hose on—it's a form fitted hose. So you can't—if you were to try to install it backwards, the hose would not line up.

Davis Depo. at 39–40. Freddie Cordle, the other Montgomery Ward installer who dealt with the disputed installation, testified at more length:

Q Is this the type of hose that's it not possible [sic], in your opinion, to put it on backwards?

A No.

Q You are saying it is possible or it is not possible?

A It is not possible to do.

Q Why is that not possible?

A Because when it runs out from the radiator, it's longer and it just turns up to the water pump, the spout sticks down off the water pump. It just comes out and it's straight up. If you put it on the other way, the radiator hose would be up in top of the radiator, sticking it up. So, you can't put it on wrong.

Q The hose is made out of rubber isn't it?

A Yes.

Q You are not able to bend it, a radiator hose?

A No, they are stiff, pre-formed.

Q So, you are not able to bend it?

A No.

Cordle Depo. at 18–19. Finally, plaintiff's expert Johnny Murray testified that "[t]here is no way that [the hose] can be put on backwards, you

these statements by all three persons with knowledge of radiator hose installation whose testimony is before the court, it is far from clear that Davis could have, or did, install the hose backwards.

Since there is a material dispute about whether the hose was negligently installed, a variety of alternative theories of the accident are possible. The hose itself, or the clamps used to attach it to the radiator and water pump, could have been defective. The radiator or water pump could somehow have caused the accident. The truck evidently had a new water pump, not that with which it was equipped when it left the factory, and this pump could have had a nonstandard fitting for a radiator hose or could have been configured in a way which would have affected the installation of the hose. Any of these possibilities could lead to a conclusion by a court or jury that Montgomery Ward is not liable for Bolling's injuries, and none of these possibilities can properly be explored now that the truck has been sold. The fact that the truck had a new water pump, for example, makes it impossible for either side to prove the most vital matter that would be in contention during a trial: that a radiator hose of the type in question either could or could not be installed backwards. A demonstration made on a factory-issue truck would be inconclusive given the uncertainty about whether the water pump attachment point for the hose was located in the same place on Fleming's truck.

Because the truck, hose and water pump actually involved in Bolling's injuries could very well serve to establish or negate various plausible theories of the accident, the court finds that this evidence is material. The court now turns to the issue of the legal consequences of the nonavailability of that evidence.

■■■ A court may make a "spoliation inference" that evidence no longer available would have been adverse to the party that made it unavailable. In deciding whether to make such an inference, the court must consider both the blameworthiness of the offending party and the prejudice to the other side. *Anderson v. National R.R. Passenger Corp.,* 866 F.Supp. 937, 945 (E.D.Va.1994). While it is clear that the unavailable evidence in this case is relevant, it is uncertain whether it would tend to exonerate or to inculpate Montgomery Ward of negligence. As discussed above, a simple experiment performed on Fleming's truck could prove that backwards installation of the radiator hose is impossible (clearing Montgomery Ward) or easily accomplished (tending to suggest Montgomery Ward's negligence). Most likely, the truth lies somewhere between these extremes, but would in any event be of great interest to a factfinder. While the spoliation inference by definition permits a court to resolve uncertainties about which side would be benefitted by absent evidence in favor of that which did not make the evidence unavailable, there is no evidence before the court suggesting Bolling's blameworthiness.

know; if so, it will not fit. It will only go on one way." Murray Depo. at 15. Murray later elaborated at some length as follows:

Q Explain to me why this hose can only be installed one way?

A Because of the way the hose is turned. If you will notice it is like this, the upper end with the elbow goes onto the water pump.

. . . .

The upper end with the elbow does go up on the spout of the water pump, the lower end does come down and goes on the radiator which is the bottom spout of the radiator. If you reversed this hose, if you will notice it will not work. Or if you try to flip this hose, it will not work. It will only go one way.

Q I understand. If by chance you were to attach, what we refer to as the upper end or the 90 to the radiator, the bottom spout of the radiator as it comes out, where would the upper end of that hose go?

A The upper end would go toward the front of the motor but it will not line up for the spout for the water pump.

. . . .

Q If someone installed that hose, for the sake of lack of a better word, backward and put one end on one end and the wrong end on the other, according to the way that you have testified today, would you have to force it over to make it line up?

A Yeah. You would have to force it. You sure would. And by forcing it, your are going to squeeze, you are going to be squeezing the spring inside as well as the hose. You are going to be forcing it against it which is going to make the hose try to collapse actually.

Murray Depo. at 18–20.

Although the truck was knowingly sold by Fleming, Bolling's father-in-law, there is no reason to suppose that Bolling conspired with or induced Fleming to dispose of the truck. Because the spoliation doctrine applies only to misbehavior by parties, Fleming's own knowledge and intent is of no concern to the court, except to the degree to which it reflects action by Bolling. *See Brewer v. Quaker State,* 72 F.3d 326, 334 (3d Cir.1995) (unavailable evidence must have been within control of party to be charged for spoliation inference to apply); *Gumbs v. Int'l Harvester,* 718 F.2d 88, 96 (3d Cir.1983) (same). The spoliation inference is a sanction for misbehavior, and the court shall not apply it where there is no significant evidence of an intent to conceal. *See Schmid v. Milwaukee Elec. Tool Corp.,* 13 F.3d 76, 78–79 (3d Cir.1994). Accordingly, the court denies Montgomery Ward's motion for summary judgment as to this issue.

This does not end the inquiry, however. The nonavailability of an important piece of evidence has consequences under the substantive law[2] of many states without regard to fault. Before turning to state law, the court must determine which state's substantive law applies to this action.

■■■ A federal court sitting in diversity applies the choice-of-law rules of the forum state, in this case Virginia. *Klaxon Co. v. Stentor,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Virginia applies the "place of the wrong" rule to tort actions. *McMillan v. McMillan,* 219 Va. 1127, 1128, 253 S.E.2d 662 (1979) (reaffirming "place of the wrong" rule). Under this rule, the situs of the injury governs the choice of law. *Vicente v. Obenauer,* 736 F.Supp. 679, 690 (E.D.Va.1990). Because Bolling's injury occurred in Virginia, a Virginia court would apply its own law to this case, and this court shall do the same.

■■■ Under Virginia law, a plaintiff who cannot produce the item allegedly responsible for his injuries must present evidence tending to negate all reasonable alternative explanations of an accident. *Logan v. Montgomery Ward,* 216 Va. 425, 428, 219 S.E.2d

685 (1975); *Lemons v. Ryder Truck Rental,* 906 F.Supp. 328, 332 (W.D.Va.1995). Although this rule was created in the context of products liability, the policy behind it is no less applicable to a case such as the present one in which the absence of vital evidence makes it impossible to negate other reasonable possible explanations. The language used by the Virginia Supreme Court in *Logan* fits the case at bar closely:

> The damaged stove, having been moved from the Logan premises, was never subjected to an examination by any expert knowledgeable in the manufacture, mechanical operation and installation of gas ranges. Without such examination, designed to elicit the cause of the explosion, and without the range itself, appellant was handicapped in her effort to prove, directly or inferentially, a case of negligence or breach of warranty.

> The mere fact of an explosion does not establish the negligence of either the manufacturer or seller of the stove, and does not establish that the stove was defective. Explosions of gas ranges can be attributed to numerous causes ... the installation of the stove might have been improperly and negligently done, thereby causing the explosion.

> ... The evidence in the instant case fails to eliminate the possibility that the blame attaches to some party other than Montgomery Ward. Neither is the proof such that the existence of a defect in the stove is the only reasonable explanation that can be drawn to explain the explosion.

*Logan,* 216 Va. at 428–29, 219 S.E.2d 685. Each jurisdiction must take a position along the tort liability evidence continuum stretching from absolute certainty to absolute doubt. Virginia's position is clear: where important evidence is unavailable, whether through the fault of the plaintiff or not, the plaintiff must present evidence tending to negate all other reasonable theories of his accident in order to establish liability. Bolling has not presented and cannot present such evidence, and

---

**2.** It is clear that such laws are substantive rather than procedural, as they pertain not to admissibility but to what evidence is necessary to estab-lish a right to recovery. *See generally Hanna v. Plumer,* 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8 (1965).

so his suit must fail. Montgomery Ward's motion for summary judgment is granted.

### CONCLUSION

For the reasons stated, defendant's motion for summary judgment is granted. An appropriate order will be entered this day.