William E. STILTNER, etc., Plaintiff,

v.

Paul CROUSE, et al., Defendants.

No. 1:03 CV 00078.

United States District Court,
W.D. Virginia,
Abingdon Division.

Aug. 2, 2004.

Paul A. Dull, Brumberg, Mackey & Wall, P.L.C., Roanoke, Virginia, for Plaintiff.

Jim H. Guynn, Jr., Guynn, Memmer & Dillon P.C., Roanoke, Virginia, for Defendants David Hicks and David McClanahan.

**OPINION**

JONES, Chief Judge.

On January 31, 2002, at about 8:30 a.m., Tina G. Stiltner, a thirty-nine-year-old Buchanan County, Virginia, homemaker, was arrested by a deputy sheriff after dropping her children off at school because she was having difficulty speaking and walking. She was charged with operating a motor

vehicle under the influence of drugs and taken to the local county jail. While she was waiting for bond to be posted by her family, Ms. Stiltner was searched and placed in a holding cell. At about 2:30 p.m. the jailers discovered that she was unconscious. After an unsuccessful effort to resuscitate her, Ms. Stiltner was transported to a local hospital where she was pronounced dead. The autopsy showed that while she had a non-toxic level of butalbital (a prescription headache remedy) in her system, her death was caused either by self-hanging or by strangulation by another person.

The present suit seeks recovery from the two jailers on duty at the time. While the exact circumstances surrounding Ms. Stiltner's tragic death remain a mystery, I find that the plaintiff has no proof that the defendants were responsible, and thus I must grant summary judgment to them.

I

William L. Stiltner, Ms. Stiltner's father and the administrator of her estate, filed this action on July 10, 2003, against the two jailers, David Hicks and David McClanahan, as well as the Buchanan County sheriff, Paul Crouse, and the jail nurse, Debra Magee. The Complaint asserted a cause of action under 42 U.S.C.A § 1983 (West 2003) for excessive force and the denial of medical treatment, as well as a pendant state cause of action for wrongful death based on negligence.[1] Summary judgment was earlier granted to Sheriff Crouse and Nurse Magee, leaving as the sole remaining named defendants Hicks and McClanahan.[2]

The remaining defendants also moved for summary judgment and oral argument on the motion was held on May 24, 2004.

At the joint request of the parties, I deferred decision until additional discovery depositions could be taken. Transcripts of those depositions have now been filed and the parties have also filed supplemental briefs. The motion is thus ripe for disposition.

The essential facts of the case, either undisputed or, where disputed, recited in the light most favorable to the nonmovant on the summary judgment record, are as follows.

Ms. Stiltner was brought to the Buchanan County jail at approximately 9:00 a.m., following her arrest. Her speech was slow and slurred and she had trouble walking. She gave a urine sample, which was positive for barbiturates, benzodiazepines and marijuana. According to Nurse Magee, Ms. Stiltner did not ask for medical assistance. The small Buchanan County jail has two holding cells for pretrial detainees. Because another detainee was in the regular holding cell, Ms. Stiltner was placed alone in the smaller alternative cell, referred to as the juvenile holding cell. This cell was in fact a short hallway that connected a locked outside door to a locked door that opened into the jailers' administrative office. On one side of the hallway was a large Plexiglas window that allowed a view from the administrative office. The outside door, which remained locked and was not normally used as an entrance from the outside, was controlled electronically from the jailers' station; the inside door was opened by a key pad.

Both defendants deny that Ms. Stiltner evidenced any problems or requested any assistance during her day-long confinement in the holding cell. She ate some lunch in the cell and Hicks claims that at 2:30 p.m. he saw her through the Plexiglas

---

1. Jurisdiction of this court exists pursuant to 28 U.S.C.A. §§ 1343, 1367 (West 1993).

2. The Complaint also seeks recovery against an unknown party, John Doe, but there has been no identification by the plaintiff of any additional responsible parties.

window sitting on the floor looking at her criminal warrant. A few minutes later, Hicks asked McClanahan to enter the cell and get the warrant so that Hicks could enter information from the warrant to Ms. Stiltner's inmate jail card. McClanahan testified that upon entering the cell, he had found Ms. Stiltner unconscious "on her knees ... laid up against the [outside] door." (McClanahan Dep. 75.) Her coat was hanging on the doorknob and she was leaning against it. McClanahan called for Hicks, who came into the cell, laid Ms. Stiltner on the floor and told Hicks to get the jail nurse. Magee arrived at about 2:40 p.m. and found that Stiltner was not breathing and had no pulse. She performed cardiopulmonary resuscitation, without success. Ms. Stiltner was later pronounced dead at the Buchanan County General Hospital.

The other detainee, Hobert Mullins, testified in his deposition that he had been brought to the jail at about the same time as Ms. Stiltner. When he first saw her, she was sitting in a chair, holding a cup of coffee and "appeared to be sick." (Mullins Dep. 6.) She asked him for a cigarette but the deputies told him not to give her one because she was intoxicated. Mullins claims that Ms. Stiltner told the deputy sheriff who brought her in "two or three times" in the presence of the jailers that "she was sick and needed to see a doctor." (Id. at 7.) After Ms. Stiltner was put into the juvenile holding cell, Mullins did not see her again until the jailers found her unconscious that afternoon.[3] When they discovered her, they let Mullins out of his

cell, which was a few feet away, and he saw Ms. Stiltner lying against the outside door and saw Hicks place her on the floor. He saw nothing in her cell other than her body and a chair. Later that evening, the jailers told him that Ms. Stiltner "had a bad reaction to drugs or some kind of medication she was on." (Id. at 14.)

William Massello, M.D., is the Assistant Chief Medical Examiner for Western Virginia. He performed the autopsy of Ms. Stiltner's body on February 1, 2002. He found that Ms. Stiltner died from "ligature compression of her neck ... consistent with either death from self-hanging or death at the hands of another from strangulation." (Report of Autopsy, Compl., Ex. 3.) She had a clearly visible ligature mark around her neck, that "was more horizontally oriented rather than being angled upwards behind the head." (Massello Dep. 8.)[4] According to Dr. Massello, there was no mark of a knot as is often present in hanging cases and horizontally-oriented ligature marks tend to be associated with strangulation cases. (Id. at 8–9.) However, ligature marks horizontally around the neck do appear in self-hanging cases where the victim ties the ligature behind her and falls forward, ending in an almost upright position. (Id. at 24–25.) Dr. Massello testified that he was not in a position to offer an opinion as to whether Ms. Stiltner's death had been caused by self-hanging or had been at the hands of another. (Id. at 21–22.)

No rope, cord, or other possible ligature was found on Ms. Stiltner's body.[5] The

---

3. Mullins testified that he had been out of the administrative office while being fingerprinted for "five or 10, 15 minutes, somewhere in there," during which Ms. Stiltner had been placed in the juvenile holding cell. (Mullins Dep. 8.) He could not see or hear her when he returned, but the jailers told him she was there.

4. Autopsy photographs are part of the summary judgment record and show various views of the ligature mark.

5. The plaintiff represents that a "two inch piece of cord or drawstring" was found in the cell after the fact and that "[i]t is apparent from viewing this piece of cord that it was cut with a knife or very sharp cutting instrument." (Mem. Opp'n Mot. for Summ. J. 6.)

defendants deny strangling Ms. Stiltner or knowing how she died. They have introduced an affidavit of the Virginia State Police detective who investigated Ms. Stiltner's death and who viewed a portion of a videotape taken of the jail administrative office during the day in question. The investigator found that no one had entered the holding cell after Ms. Stiltner had been placed in it until her unconscious body had been discovered.[6]

## II

Summary judgment is appropriate when there is "no genuine issue of material fact," given the parties' burdens of proof at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see* Fed.R.Civ.P. 56(c). In determining whether the moving party has shown that there is no genuine issue of material fact, a court must assess the factual evidence and all inferences to be drawn therefrom in the light most favorable to the non-moving party. *See Ross v. Communications Satellite Corp.*, 759 F.2d 355, 364 (4th Cir.1985).

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." *Id.* at 327, 106 S.Ct. 2548. It is the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir.1993) (internal quotation marks omitted).

■ Jailers are liable under 42 U.S.C.A. § 1983 for harm occurring to pretrial detainees when the jailers are deliberately indifferent to a substantial risk of the harm. *See Young v. City of Mount Ranier*, 238 F.3d 567, 575–76 (4th Cir.2001). This is a high standard and one not met by a showing of mere negligence. *See Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir. 1999). The proof must show that the defendant jailers actually knew of and disregarded the substantial risk of serious injury to the detainee. *See Young*, 238 F.3d at 575–76.

■ There is no such evidence in this case. Even accepting Mullins' testimony that Ms. Stiltner asked to see a doctor at some point during her confinement, there is no evidence that the officers knew that she was suffering from any psychological difficulty that would cause her to take her own life. While Ms. Stiltner may not have been feeling well, it is uncontested that she did not request medical aid from the jail nurse who saw her initially. According to observers, Ms. Stiltner thereafter drank coffee and conversed with others, request-

---

Hicks testified in his deposition that a "small piece .... of string or rope or something" had been found in the cell (Hicks Dep. 46), but that is the extent of what the summary judgment record shows. Nevertheless, the defendants do not dispute the representations of the plaintiff and I will assume for the purposes of the present motion that there is evidence that a two-inch piece of cut cord or drawstring was found in the cell. As previously noted, there is evidence that Ms. Stilt-

ner's coat was hanging on a doorknob in the cell next to her body. (Hicks Dep. 37.)

6. A videotape was also submitted with the affidavit, but the tape ends before the cell was entered. The tape does show that the jail administrative office was a busy place, with persons coming and going, and that the jailers moved around the room and left it on occasion in the performance of their duties.

ed a cigarette, and even ate part of her lunch. It is settled that jail officials "need not screen a pretrial detainee for suicidal tendencies if they have no knowledge that the prisoner is suicidal." *Gordon v. Kidd,* 971 F.2d 1087, 1094 (4th Cir.1992).

Moreover, if Ms. Stiltner did not take her own life, there is no evidence that the jailers had information that she would be harmed by someone else. For example, in *Odom v. South Carolina Department of Corrections,* 349 F.3d 765 (4th Cir.2003), deliberate indifference was found where prison guards had been warned that other inmates would attack the plaintiff if given the chance. *Id.* at 771. The defendants here were never warned that someone might seek to take Ms. Stiltner's life.

In his supplemental brief, the plaintiff now appears to take the position that the evidence presents a question of fact as to whether the defendants themselves murdered Ms. Stiltner. Of course, the use of such force, if shown, would amount to the deprivation of her constitutional right to due process. *See Riley v. Dorton,* 115 F.3d 1159, 1166 (4th Cir.1997).

Even viewing the evidence in the light most favorable to the plaintiff, however, there is simply no proof that Hicks or McClanahan, or both, murdered Ms. Stiltner. The medical examiner cannot say whether she was murdered or took her own life. While the officers had access to her in the holding cell, no motive for such an outrageous act has been reasonably suggested. It would be pure speculation to conclude that she was murdered by her jailers rather than that she took her own life.

■ The plaintiff also asserts a state cause of action for wrongful death. However, for the reasons previously given, there is inadequate proof that the jailers were negligent in their handling of Ms. Stiltner[7] or committed an intentional tort against her. Although there was a Plexiglas window in the holding cell, there is no evidence that the jailers could have seen Ms. Stiltner in time to prevent her from being harmed. The videotape of the jailers performing their duties on the day in question shows that they did not keep watch over the holding cell through the Plexiglas window, nor, in the absence of a known risk, were they required to do so.

Finally, the plaintiff argues that even absent proof, the case ought to go to a jury under the doctrine of res ipsa loquitur. However, that doctrine " 'does not apply in the case of an unexplained accident which may have been attributable to one of several causes, for some of which the defendant is not responsible.' " *Logan v. Montgomery Ward & Co.,* 216 Va. 425, 219 S.E.2d 685, 688 (1975) (quoting *Pepsi–Cola v. Yeatts,* 207 Va. 534, 151 S.E.2d 400, 403 (1966)). Clearly, the evidence does not foreclose the possibilities that Ms. Stiltner died at her own hands or those of a third party.

## III

The evidence in this case does not satisfactorily explain the circumstances of Ms. Stiltner's death. The most puzzling question arises from the absence of the rope or cord that apparently caused her to lose her life. Ms. Stiltner's family is surely vexed by the lack of clear answers for their sad loss. That they blame those at the jail is

---

7. Indeed, it is probable that under Virginia law the plaintiff would be required to prove the defendants grossly negligent. *See Colby v. Boyden,* 241 Va. 125, 400 S.E.2d 184, 186–87 (1991) (holding that deputy sheriff operating police car that collided with motorist was protected by sovereign immunity because he was engaged in discretionary governmental function; in such a case, gross negligence must be established).

completely understandable. As a judge of a court of law, however, I must apply the burden of proof objectively, without the influence of my natural sympathy for those Ms. Stiltner left behind. That burden of proof does not permit this case to proceed to trial. Accordingly, I will grant the defendants' Motion for Summary Judgment and dismiss the case.[8]

A final judgment will be entered forthwith.

---

**8.** While the theoretical John Doe defendant still remains, the plaintiff has had adequate opportunity to identify any other responsible persons and there is no further justification for keeping the case on the docket.