48 F.3d 1215
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 Edward Raymond DAVIS, Plaintiff-Appellant,
v.
SIMON-TELELECT, INCORPORATED; Eusco, Incorporated,
Defendants-Appellees,
and
TELELECT, INCORPORATED; Simon United States Holdings,
Incorporated, Defendants.
 No. 94-1707.
 United States Court of Appeals, Fourth Circuit.
 Argued Nov. 3, 1994.
Decided March 10, 1995.
 
 ARGUED: Melissa Warner Scoggins, GENTRY, LOCKE, RAKES & MOORE, Roanoke, VA, for Appellant. James W. Jennings, Jr., WOODS, ROGERS & HAZLEGROVE, P.L.C., Roanoke, VA, for Appellee Simon Telelect; Edwin Ford Stephens, CHRISTIAN, BARTON, EPPS, BRENT & CHAPPELL, Richmond, VA, for Appellee Eusco. ON BRIEF: S.D. Roberts Moore, Melissa W. Robinson, GENTRY, LOCKE, RAKES & MOORE, Roanoke, VA, for Appellant. Frank K. Friedman, Mark D. Loftis, WOODS, ROGERS & HAZLEGROVE, P.L.C., Roanoke, VA, for Appellee Simon Telelect; Warren D. Harless, CHRISTIAN, BARTON, EPPS, BRENT & CHAPPELL, Richmond, VA, for Appellee Eusco.
 Before HALL and MICHAEL, Circuit Judges, and CHAPMAN, Senior Circuit Judge.
 OPINION
 PER CURIAM:
 
 
 1
 Plaintiff-appellant Edward Raymond Davis ("Davis") initiated this products liability action against defendants-appellees Simon-Telelect, Inc. ("Simon") and Eusco, Inc. ("Eusco") in the District Court for the Western District of Virginia. Simon and Eusco each moved for summary judgment, and the district court granted both motions. After considering the record, briefs, and oral arguments, we affirm.
 
 I.
 
 2
 On August 28, 1990, Davis suffered severe injuries when an outrigger* on a digger-derrick truck crushed his foot. At the time, Davis was a line crewman for United Inter-Mountain Telephone Company, a subsidiary of United Telephone Systems (United Telephone). He and three other crewman, Vass, Porter, and Williams, went to repair a telephone cable that had slipped off a telephone pole. Vass and Porter drove the digger-derrick truck ("the truck") to the site, and parked just off the road. Davis and Williams followed in a pick-up truck. On arriving at the scene, Davis went to the truck to retrieve his tools, and Williams went into the woods to determine the scope of the necessary repairs.
 
 
 3
 Davis approached the driver's side of the truck from the rear and opened the cabinet door where the tools were stored. Before opening the cabinet door, Davis checked the catwalk behind the cab of the truck to make sure no one was there operating the controls to lower the outriggers. Once the door to the tool cabinet was open, the upper part of Davis's body was hidden from the view of anyone operating the outriggers.
 
 
 4
 While Davis was behind the door, Vass went to the controls and began to lower the outriggers. Vass noticed the tool cabinet door was open, but assumed that Porter, who was standing near the door and clear of the outrigger, had opened it. Vass lowered the outrigger, which crushed Davis's foot.
 
 
 5
 United Telephone purchased the truck in March, 1988. Lynn Bryngelson was the purchasing agent for United Telephone, and he invited bids on three digger-derrick trucks from five companies, including Eusco. In the letter requesting bids, Bryngelson included eleven pages of specifications, eight concerning the digger-derrick unit and three concerning the Ford truck to which the unit was to be attached. Bryngelson compiled these specifications from manufacturers' catalogs and information from product suppliers as to what was available in the market. Although these specifications did require warning decals on the truck, they did not include a request for an audible alarm to indicate the lowering of the outriggers. Neither the Occupational Safety Health Administration ("OSHA") nor the American National Standards Institute ("ANSI") required audible alarms.
 
 
 6
 United Telephone accepted Eusco's bid. Simon manufactures digger-derrick units, and Eusco, as an authorized agent of Simon, ordered the digger-derrick portion of the truck from Simon. Eusco then assembled the truck in compliance with the specifications. Before assembly, Eusco sent drawings to United Telephone of the proposed completed product, which United Telephone had approved. After assembly, United Telephone inspected the completed truck and approved it before accepting delivery.
 
 II.
 
 7
 Davis alleged that the defendants negligently designed the truck and negligently failed to warn of any hazards associated with the use of the truck, and that the defendants breached the implied warranty of merchantability, the implied warranty of fitness for a particular purpose, and certain express warranties. The district court found that the defendants had no duty to warn because the defect was open and obvious. It also found that Davis's assumption of the risk precluded his claims of design defect and breach of the implied warranty of merchantability, and that the remaining warranties were not breached.
 
 
 8
 We review the district court's grant of summary judgment de novo. Foster v. American Home Prod. Corp., 29 F.3d 165, 168 (4th Cir.1994). Summary judgment is proper where there are no genuine issues of material fact, and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). All evidence must be viewed in the light most favorable to the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).
 
 A. Negligence
 
 9
 A manufacturer has a duty not to produce an unreasonably dangerous product. Austin v. Clark Equip. Co., 821 F.Supp. 1130, 1133 (W.D.Va.1993); Logan v. Montgomery Ward & Co., 219 S.E.2d 685, 687 (Va.1975). A product is "unreasonably dangerous" if it is: (1) defectively assembled or manufactured; (2) imprudently designed; or (3) not accompanied by adequate warnings about its hazardous properties. Abbot v. American Cyanamid Co., 844 F.2d 1108, 1114 (4th Cir.1988), cert. denied, 488 U.S. 908 (1988). Davis alleged that the defendants negligently designed the truck by failing to install an audible alarm on the outriggers and by failing to provide clear visibility from the control panel to the rear outriggers, and that the defendants breached a duty to warn by failing to adequately warn about these defects.
 
 1. Duty to Warn
 
 10
 The Virginia courts have adopted the "sophisticated user" defense to a failure to warn claim. Willis v. Raymark Indus., Inc., 905 F.2d 793, 796 (4th Cir.1990); Featherall v. Firestone Tire and Rubber Co., 219 Va. 949, 252 S.E.2d 358, 366 (1979). This defense relieves the manufacturer of liability if the employer-purchaser is aware of the dangers of the product that it purchased for its business, and this defense places upon the employer any duty to warn employees of danger. Beale v. Hardy, 769 F.2d 213, 215 (4th Cir.1985); cf. Greater Richmond Civic Recreation, Inc. v. A.H. Ewing's Sons, 106 S.E.2d 595, 597 (Va.1959). United Telephone, an experienced purchaser of digger-derrick trucks, was familiar with the hazards associated with such trucks. The truck in question was made to the exact specifications of United Telephone. See Spangler v. Kranco, Inc., 481 F.2d 373 (4th Cir.1973) (no liability for failure to warn especially where product manufactured to plans of purchaser).
 
 
 11
 Also, "a manufacturer is not liable for ... the failure to warn where the hazard is open and obvious." Austin v. Clark Equipment Co., 821 F.Supp. 1130, 1133 (W.D.Va.1993); see Harris-Teeter, Inc. v. Burroughs, 399 S.E.2d 801 (Va.1991). Davis regularly worked with the truck and was aware that his co-workers had mentioned the need for an audible alarm on the truck. Davis also admitted that he was aware that an operator would not be able to see someone standing behind the open side-door. The hazards associated with the truck were open and obvious, and we agree with the district court that the defendants did not breach their duty to warn.
 
 2. Defective Design
 
 12
 Under Virginia law,
 
 
 13
 [t]o prevail in a products liability case ... the plaintiff must prove that the product contained a defect which rendered it unreasonably dangerous for ordinary or foreseeable use.... The product need not incorporate the best or most highly advanced safety devices. In determining what constitutes an unreasonably dangerous defect, a court will consider safety standards promulgated by the government or the relevant industry, as well as the reasonable expectations of consumers.
 
 
 14
 Alevromagiros v. Hechinger Co., 993 F.2d 417, 420 (4th Cir.1993). At the time United Telephone ordered the truck, there were no regulations under OSHA or ANSI requiring an audible alarm on the outrigger. At the time United Telephone ordered the truck, audible alarms were not standard equipment on similarly made trucks. Because government and industry standards were met, we turn to the consumer's expectations.
 
 
 15
 United Telephone ordered a specifically manufactured truck from Eusco. There were eleven pages of specifications. United Telephone had previously ordered and used digger-derrick trucks and was familiar with its needs and what was available in the market. United Telephone inspected and approved drawings of the truck and the finished product. There is no dispute that United Telephone received exactly what it ordered. Virginia does not require manufacturers "to force consumers to purchase the utmost safety features;" therefore, when a customer does not order a specific safety feature, "the manufacturer should not be held liable for damages which that safety feature may have prevented." Austin v. Clark Equip. Co., 821 F.Supp. 1130, 1135 (W.D.Va.1993).
 
 This court has held that
 
 16
 the products liability rule holding a manufacturer liable does not apply where the product had been manufactured in accordance with the plans and specifications of the purchaser except when such plans are so obviously dangerous that they should not reasonably be followed. While we do not suggest that the foregoing principle should be applied to immunize a manufacturer from liability in every case, we are of the opinion that [the manufacturer] acted reasonably in relying upon [the purchaser's] industrial expertise and following its plans and specifications, especially since it is conceded that neither the National Safety Code nor the Occupational Health and Safety Act require warning devices.
 
 
 17
 Spangler v. Kranco, Inc., 481 F.2d 373, 375 (4th Cir.1973) (involving the absence of an audible alarm on a pendant operated crane). Because the defendants manufactured the truck to United Telephone's exact specifications, and acted reasonably in relying upon the purchaser's expertise, and because the hazard was open and obvious, and no safety codes required audible warnings, we find no negligence on the part of the defendants for imprudent design or failure to warn.
 
 B. Warranties
 
 18
 The district court assumed without deciding that none of the warranties had been disclaimed. We do the same.
 
 
 19
 1. Implied Warranty of Fitness for a Particular Purpose
 
 
 20
 Section 8.2-315 of the Virginia Code governs the imposition of an implied warranty of fitness for a particular purpose. Va.Code Ann. Sec. 8.2-315 (Michie 1991). In order to recover for a breach of an implied warranty of fitness for a particular purpose, three elements must be established: (1) the seller must have had reason to know the particular purpose for which the buyer required the goods; (2) the seller must have had reason to know the buyer was relying on the seller's skill or judgment to furnish appropriate goods; and (3) the buyer, in fact, relied upon the seller's skill or judgment. Medcom, Inc. v. C. Arthur Weaver Co., 348 S.E.2d 243, 246 (Va.1986). The official comment to section 8.2-316 states that the implied warranty of fitness for a particular purpose would not normally arise in a situation in which the buyer gives precise and complete specifications to the seller. Va.Code Ann. Sec. 8.2-316 cmt. 9 (Michie 1991).
 
 
 21
 The district court found that Eusco and Simon had no reason to know of any particular purpose for which the truck was required other than it was to meet the specifications provided by United Telephone. There is no evidence that the truck failed to meet these specifications. Therefore, we agree with the district court that the defendants did not breach any implied warranty of fitness for a particular purpose.
 
 2. Implied Warranty of Merchantability
 
 22
 Section 8.2-314 of the Virginia Code governs the imposition of an implied warranty of merchantability. Va.Code Ann. Sec. 8.2-314 (Michie 1991). This warranty requires that the goods be fit for the ordinary purposes for which those goods are used. As discussed above, United Telephone was a sophisticated purchaser. "When a skilled purchaser ... knows or reasonably should be expected to know of the dangerous propensities or characteristics of a product, no implied warranty of merchantability arises." Goodbar v. Whitehead Bros., 591 F.Supp. 552, 567 (W.D.Va.1984). Because United Telephone did not receive an implied warranty of merchantability, no warranty ran to Davis.
 
 3. Express Warranties
 
 23
 Davis asserted that Simon made express warranties in its "Certificate of Conformity" which stated:
 
 
 24
 This is to certify that the new TELELECT unit designated above has been successfully tested and thoroughly inspected for conformance with the TELELECT specifications applicable to this model, for the acknowledgement for the unit, and with applicable regulations of OSHA as of the date shown below.
 
 
 25
 * * *
 
 
 26
 It is the responsibility of the final-stage manufacturer to certify that the entire vehicle or installation conforms to all applicable standards.
 
 
 27
 Also, Eusco described the unit as "in accordance with current industry and engineering standards applicable and accepted for structural and hydraulic design safety factors." We will assume without deciding that these were express warranties.
 
 
 28
 The district court found that the only evidence was that the truck complied with all applicable OSHA and ANSI regulations and that there was no evidence to suggest that the express warranties were breached. We agree.
 
 
 29
 For all the foregoing reasons, the judgment of the district court is
 
 
 30
 AFFIRMED.
 
 MICHAEL, Circuit Judge, concurring:
 
 31
 I concur in most of the majority opinion and in the judgment. I depart a bit from the majority's reasoning on one aspect of the design defect claim. I do not believe that the reasonable expectations of consumers are established by the fact that United Telephone "received exactly what it ordered." Instead, I would require objective evidence of consumers' expectations. See Alevromagiros v. Hechinger Co., 993 F.2d 417, 421 (4th Cir.1993) (appearing to require objective evidence of consumers' reasonable expectations, e.g., evidence of industry practice or expert testimony based on literature in the field). Because Davis did not come forward with objective evidence that consumers could reasonably expect audible warning bells, I join in the majority's conclusion that his design defect claim must fail.
 
 
 
 *
 The outriggers stabilize a digger-derrick truck while the boom is being operated. Outriggers consist of a steel shaft, with a steel platform at the end, which extends from the side of the truck at shallow angles