**Kenneth R. LEMONS, Plaintiff,**

v.

**RYDER TRUCK RENTAL, INC. and Maxon Industries, Inc., Defendants.**

**Civ. A. No. 93–0055.**

United States District Court, W.D. Virginia, Abingdon Division.

Nov. 21, 1995.

---

D. Jeffrey Coale, Abingdon, VA, for Plaintiff.

James R. Austin, Roanoke, VA, Melissa W. Robinson, Roanoke, VA, John E. Kieffer, Bristol, VA, for Defendants.

## MEMORANDUM OPINION

GLEN M. WILLIAMS, Senior District Judge.

In this products liability action arising from an accident involving a truck lift gate, defendants move for summary judgment. The motion is granted.

### FACTS

Plaintiff Kenneth Lemons ("Lemons"), an employee of Nautilus, was injured while unloading a heavy piece of exercise equipment from a Ryder Truck Rental, Inc. ("Ryder") truck leased by his employer. The accident occurred while Lemons was moving equipment from the truck to a loading dock across a lift gate, a device attached to the back of a truck that unfolds to create a platform between the truck and a loading dock across which people and equipment can be moved. The details of the accident are in dispute, but plaintiff contends that the lift gate collapsed under the weight of the equipment by folding in a direction it was not intended to fold. The expert witness offered by Lemons states that the reason the lift gate folded is that the chains intended to support the gate were not attached to the end of the lift gate platform, as he says they should have been, but some distance from the end. Thus, when sufficient weight was placed on the lift gate beyond the attachment point of the chains, the end tilted downwards and the middle of the lift gate (where the platform was hinged) folded upwards. The specific lift gate involved in the accident cannot now be located, but plaintiff identifies it as one manufactured by defendant Maxon Industries, Inc. ("Maxon").

Plaintiff sued Ryder and Maxon under theories of negligence and breach of warranty. Defendants now move for summary judgment on three grounds. First, they contend that the unavailability of the lift gate makes a finding of liability against them impossible. Second, they argue that the evidence is insufficient to demonstrate noncompliance by either defendant with any industry or government standard. Finally, defendants argue that plaintiffs employer, Nautilus, was a sophisticated user of the trucks and lift gates, and that its detailed specifications to Ryder

about what equipment it wished to lease absolve defendants of any liability.

### ANALYSIS

■ To prevail on a motion for summary judgment under Fed.R.Civ.P. 56(c), the moving party must demonstrate that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 , S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden is on the nonmoving party to "set forth specific facts" that demonstrate a dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). In considering defendants' motion, the Court views the underlying facts and all reasonable inferences drawn therefrom in the light most favorable to Lemons, the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

■ We turn first to the plaintiff's burden to establish the existence of a defect. Under Virginia law, in order to establish a defect, the plaintiff must prove violation of industry or government safety standards. *Alevromagiros v. Hechinger Co.,* 993 F.2d 417, 421 (4th Cir.1993). In the absence of such standards, plaintiff must demonstrate that the product violated the reasonable expectations of consumers. *Id.* at 421, 422; *Mears v. General Motors,* 896 F.Supp. 548, 551 (E.D.Va.1995); *Stokes v. L. Geismar, S.A.,* 815 F.Supp. 904, 908 (E.D.Va.1993); *Davis v. Simon–Telelect,* 1995 WL 100563 at *3, 1995 U.S.App. LEXIS 4788 at *8 (4th Cir.1994); *Walker v. Caterpillar Industrial, Inc.,* 1994 WL 406563 at *1–2,

1994 U.S.App. LEXIS 20301 at *5 (4th Cir. 1994). Through the testimony of his expert witness, Jerry Burke,[1] plaintiff has attempted to prove both. We take up each issue in turn.

### Industry Standards

■ Burke's evidence is contradictory on the subject of whether industry standards exist at all with respect to lift gates.[2] Burke claims that the lift gate on which the plaintiff was injured "does not represent the industry standard," Burke Supplemental Affidavit at 2, but goes on to state that "there are no government or industry standards for that particular aspect of this folding lift gate that I consider improperly designed," *id.* at 3. The evidence which Burke offers for the failure of the lift gate at issue to comply with industry standards entirely fails to accomplish its purpose. Burke states that "there are many different designs for lift gates," *id.* at 2, and he lists five different basic designs, the first of which is "folding platforms such as the one Lemons was using at the time of the Accident, which have side chains or side cables attached a significant distance from the end, or outboard edge, of platform, but which lack a locking mechanism." *Id.* Burke goes on to state that "many competing lift gates avoid the defect described in my initial Affidavit [i.e. the propensity to buckle in the middle when sufficient weight is exerted at the very end of the lift gate platform]." This evidence makes two things clear. First, there is no single standard design of lift gates, as five basic designs were identified by Burke. Second, the Maxon lift gate at issue is designed in the same fashion and with the

---

1. Burke's qualifications as an expert in this case are somewhat doubtful. Burke is a registered professional engineer in Virginia, with primary work experience with aeronautical engines, petroleum trucks, incinerators, and various machines and internal combustion engines. His curriculum vitae asserts proficiency in some 202 different "machines, products and processes," ranging over a vast and miscellaneous range of human endeavor, including derricks, reactor vessels, various types of elevators, arson, various firearms, air conditioning, skis, diving boards, "suitability for intended use" of various materials, automobiles, aircraft, and power hand tools. The court seriously doubts that any human being could possibly be an expert with respect to all of

the subjects just listed, much less all of those set forth in Mr. Burke's resume. In any event, lift gates are nowhere mentioned therein, and Mr. Burke neither states a basis for his expertise with lift gates nor recites that he is an expert with respect to them. Not having a motion before it to exclude Mr. Burke's testimony, however, the court does not reach this issue.

2. Neither plaintiff nor defendants have brought to the court's attention any published safety standard promulgated by industry or the government. The only evidence before the court on this issue is of the similarity or lack thereof between Maxon's design and those of various competitors.

same "defect" as at least some competing lift gates. This evidence is insufficient as a matter of law to demonstrate the violation of any industry safety standard.[3]

### Expert Opinion on Applicable Safety Standard

■ Virginia law permits the admission of expert opinions on safety in the absence of an industry standard. *Ford Motor v. Bartholomew*, 224 Va. 421, 430, 297 S.E.2d 675 (1982). The evidence offered, however, must still be sufficient to sustain a verdict in favor of the party offering it. *Alevromagiros, supra*, at 421. We hold that the evidence offered by plaintiff does not meet this standard. The only evidence of defect is Burke's opinion about how the accident occurred, based on his inspection of "lift gates of the same or substantially the same design" as that involved in the accident, and of "lift gates of numerous differing designs," and also of "literature ... regarding lift gates of numerous differing designs." In addition, Burke conducted an experiment on a Maxon model RC lift gate, "which is substantially the same as that which Lemons described and was using at the time of the Accident." Burke had two men stand at the extreme edge of the lift platform, causing the lift gate to buckle in the middle. This evidence is insufficient to discharge plaintiff's burden. First, it is tainted by doubt as to the identity of the lift gate actually involved in the accident. The evidence on this point is equivocal and disputed on many points, but even taken in the most favorable light for the plaintiff, the court has no evidence before it that the specific model of lift gate involved in the accident was ever inspected, analyzed, tested, experimented upon, or mentioned in the literature reviewed. Unless various physical attributes of the lift gate at issue and those examined by the expert are sufficiently similar, his analysis and experiment are of little significance. The relevant attributes probably include the weight of the two plates comprising the platform, the nature of the hinge between these plates, and the distance between the edge of the platform and the attachment point of the support chains. No evidence about any such similarities is before the court.

■ Second, we hold that the evidence is simply not of sufficient quantity and weight to meet plaintiff's burden. *Bartholomew* and *Alevromagiros* both require that expert testimony rise to a certain level of persuasiveness before it will be admitted. *See Alevromagiros, supra*, at 421 (requiring "an expert opinion based on extensive testing and published reports"); *Bartholomew, supra*, at 429, 297 S.E.2d 675 (holding that an expert opinion had proper foundation where the expert studied relevant federal manuals and data, consulted with other experts, and experimented with the specific product alleged to have caused the accident as well as several competing products). This holding is a close one, and it may be that the court would conclude differently if it had proof before it about the model of lift gate involved in the accident. However, Virginia law is quite clear that in order to prove defect, a plaintiff who cannot produce or identify the specific item which he claims is responsible for his injuries must present evidence tending to negate all reasonable alternative explanations of his injuries. *Logan v. Montgomery Ward*, 216 Va. 425, 428, 219 S.E.2d 685 (1975). Experiments performed upon lift gates which may or may not be similar in relevant respects to the lift gate involved in the accident cannot discharge this burden. Accordingly, the court holds that the expert's testimony does not establish any safety standard with respect to lift gates.

### Consumer Expectations

■ Having failed to prove a violation of an industry or government safety standard, or of any other safety standard, plaintiff must establish that reasonable consumer expectations were violated by the lift gate. To demonstrate consumer expectations, the ex-

---

**3.** Indeed, the evidence suggests that Maxon *complied* with industry standards to the extent that competitors' lift gates are manufactured with supporting chains connected short of the very end of the platform. Compliance with industry custom "may be conclusive when there is no evidence to show that [a product] is not reasonably safe." *Turner v. Manning, Maxwell & Moore*, 216 Va. 245, 251, 217 S.E.2d 863 (1975).

pert may use "evidence of actual industry practices, knowledge at the time of other injuries, knowledge of dangers, published literature, and ... direct evidence of what reasonable purchasers consider defective." *Alevromagiros, supra,* at 420–21 (citing *Sexton v. Bell Helmets,* 926 F.2d 331 (4th Cir. 1991)). The expert's testimony on this issue may not simply be conclusory, but "requires a factual examination of what society demanded or expected from a product." *Sexton, supra,* at 337. Burke's testimony does not rise to this level. Burke offered no evidence of noncompliance with actual industry practices, no knowledge by Ryder or Maxon of any other injuries or dangers, no published literature, and no direct evidence of the actual expectations of consumers. Burke's relevant testimony is as follows: "Consumers expect that a lift gate, like any item, will perform safely. Since the lift gate in question is unsafe while performing the intended, expected and foreseeable operations, the lift gate does not meet the consumers expectations." Burke Supplemental Affidavit at 4. This testimony is conclusory, question-begging, and insufficient to demonstrate a violation of reasonable consumer expectations.

Because plaintiff has failed to demonstrate either the violation of an industry standard or of reasonable consumer expectations, he has failed to make out a prima facie case of defect. Accordingly, the court grants defendant's motion for summary judgment. Although this holding disposes of the case, the court will address two alternative grounds for its holding today.

### Modifications to Lift Gate

■ Defendants contend that the inability of Lemons to identify the specific lift gate which allegedly injured him makes it impossible for him to prove certain essential elements of his case. In order to establish liability under either a negligence or breach of warranty theory, Lemons must prove that the lift gate was unreasonably dangerous and thus defective. *Logan, supra,* at 428, 219

S.E.2d 685. Lemons must demonstrate that this condition existed when the lift gate left the defendants' hands, *id.,* and that the defect caused his injuries, *id.*

■ Virginia law does not support the proposition that a products liability case absolutely cannot go forward in the absence of the specific product alleged to have produced the injury, but the burdens which such a circumstance imposes on the plaintiff are substantial. *See Logan, supra* at 429, 219 S.E.2d 685 (granting summary judgment where the product—an exploded gas stove—was unavailable for inspection, and the evidence neither "eliminate[d] the possibility that the blame attaches to some other party" nor was it such that "the existence of a defect ... is the only reasonable inference that can be drawn to explain the [accident]"); *Boyle v. United Technologies,* 792 F.2d 413, 415 (4th Cir.1986) (stating that "the law of products liability in Virginia does not permit recovery where responsibility is conjectural," citing *Logan* ). Lemons will therefore escape summary judgment only if his evidence tends to eliminate all reasonable possibilities that some other party or cause is to blame for the accident, or if the facts are such that no other inference but the existence of a defect in the lift gate is reasonable. These requirements incorporate the two principal burdens of proof on plaintiff: that the lift gate was defective, and that it was so when it left the defendants' hands.

Plaintiff's evidence is insufficient to meet the *Logan* standard, as it fails to demonstrate that the lift gate allegedly responsible for plaintiff's injuries was, at the time of the accident, in the same condition as it was when it left the control of either of the defendants.[4] Plaintiff's own evidence demonstrates, for example, that Nautilus made modifications to various lift gates leased to it by Ryder. Plaintiff's Memorandum in Opposition to Defendants' Motion for Summary Judgment at 8. Although the modifications referred to occurred after the accident, they strongly suggest the possibility of repair, maintenance, or modification work on the lift

---

4. The court need not address the issue of whether the relevant test is whether the lift gate was unaltered from the time it left Maxon's control, or instead from the time it left Ryder's, as the evidence relied upon herein demonstrates the possibility of alterations after either point.

**334**

gates *before* the accident. Plaintiff's statement that "since Ryder cannot find its own Lift Gate, they [sic] are unlikely to present any evidence that the Lift Gate was altered" is true, but is a double-edged sword; neither can plaintiff demonstrate that the lift gate was not altered.

### Causation

 Burke's analysis of the modifications in design Maxon could have made to avoid the accident is insufficient. Virginia applies a "but for" test to tort liability. *See Wells v. Whitaker,* 207 Va. 616, 622, 151 S.E.2d 422 (1966). Unless the alternative design offered would in fact have prevented the accident from occurring, plaintiff cannot establish causation. Burke stated that the "defect" in the lift gate could be prevented by attaching the chains to the very end of the platform rather than some distance from the end. No evidence was offered, however, that this design is technically feasible and desirable. *See Allen v. Minnstar, Inc.,* 8 F.3d 1470, 1479 (10th Cir.1993); *Kesler v. Crown Equipment Corp.,* 1994 WL 782904 at *3, 1994 U.S.Dist. LEXIS 20126 at *9–10 (W.D.Va.1994). Plaintiff has not even identified any competing lift gate which incorporates the design Burke claims Maxon should have used. It may well be the case that attaching the chains to the very end of the platform would cause other risks or hinder the usefulness of the product. For example, attachment points placed at the end of the platform may be weaker, because they must be attached to the thinner metal at the end of the platform which is designed to rest on the edge of a loading platform. Or the bulk of the attachment points at the very end of the platform could make it more difficult to use the lift gate in narrow loading dock doorways which would otherwise be just wide enough to admit the gate Thus, defendant is entitled to summary judgment on this issue, as well.

The court finds no reason to address defendants' claims that no warranties attach to a lease transaction, and that Nautilus's status as a sophisticated user bars plaintiff's recovery.

### CONCLUSION

For the reasons stated, the court grants defendants' motion for summary judgment. An appropriate order will be entered this day.