Sally V. GIBSON, Plaintiff

v.

WAL–MART STORES, INC. d/b/a Wal–Mart and R.W. Packaging, Ltd., Defendants

Civil Action No. 200CV00152.

United States District Court, W.D. Virginia, Big Stone Gap Division.

Feb. 19, 2002.

W. Shawn McDaniel, Robert Paul Starnes, Joseph E. Wolfe, Wolfe & Farmer, Norton, VA, Terry Gene Kilgore, Gate City, VA, for Sally V. Gibson.

James C. Joyce, Jr., Beth G. Colling, Gentry, Locke, Rakes & Moore, Roanoke, VA, William Beverley Tiller, Michael Scott Bucci, Morris and Morris, P.C., Richmond, VA, for WalMart Stores, Inc.

James C. Joyce, Jr., Beth G. Colling, Gentry, Locke, Rakes & Moore, Roanoke, VA, for RW Packaging Ltd.

### Memorandum Opinion

GLEN M. WILLIAMS, Senior District Judge.

This case, involving allegations of negligent product design, manufacture, and marketing in violation of the Federal Hazardous Substances Act, the Poison Prevention Packaging Act, and the Toxic Substance Control Act, as well as negligent product placement and negligent treatment of a business invitee, comes before the court on Defendants' Motion for Summary Judgment. For the reasons contained in this Memorandum Opinion, Defendants' motion is hereby **GRANTED** as to all counts.

### I. Factual Background

The essential facts of the case, either undisputed or where disputed, recited in the light most favorable to the nonmovant on the summary judgment record, are as follows.

Plaintiff Sally V. Gibson (Mrs. Gibson) and her husband Silas Gibson (Mr. Gibson) went to the Wal–Mart Store (Wal Mart) in Norton, Virginia, on August 29, 1998 with the intent of purchasing a charcoal grill, charcoal, and charcoal lighter fluid. (Dep. of Mrs. Gibson at 8.) Mrs. Gibson, at the time of the incident giving rise to this suit, was a five-foot, three-inch tall, 62–year–old woman. Mr. and Mrs. Gibson proceeded to the Lawn and Garden department to gather the items they wished to purchase. After getting a charcoal grill and a bag of charcoal, Mrs. Gibson went to retrieve the lighter fluid. (Id.)

The lighter fluid was located above Mrs. Gibson's head, but still within her reach. She reached above her head, grasped the center of the container, and tipped it sideways such that the top of the container was lower than the bottom. (Dep. of Mrs. Gibson at 8; Mrs. Gibson Aff.) At that point, lighter fluid spilled from the can onto Mrs. Gibson's clothing and into her mouth. Mrs. Gibson swallowed some to the lighter fluid. (Mrs. Gibson Aff.) Her husband, Mr. Gibson, was present when the incident occurred.

Mrs. Gibson was rendered unable to speak. (Mrs. Gibson Aff.; Lewis Aff.) Mr. Gibson immediately sought help following the incident. A Wal Mart associate brought a chair for Mrs. Gibson. Margaret Lewis (Lewis), a Support Team Manager at the time of the incident, responded to a call over the public announcement system for assistance. Upon learning that Mrs. Gibson had potentially ingested some

of the lighter fluid, Lewis contacted St. Mary's Hospital and was directed to call the Poison Control Center. (Lewis Aff.) The Poison Control Center directed Lewis to give Mrs. Gibson water to drink, which she did. (Id.) Lewis then asked Mrs. Gibson if she could fill out an incident report. (Id.) Mrs. Gibson filled out the incident report at that time. (See Exhibit A, Lewis Aff.)

According to Mr. Gibson, he requested that Lewis contact emergency medical services and arrange for an ambulance transport to the hospital, (Mr. Gibson Aff.) However, Lewis refused to do so. (Id.) Lewis states that Mr. Gibson did not request an ambulance at any time. Rather, he asked if he could transport his wife to the hospital after she had filled out the incident report. (Lewis Aff.) Lewis further states that she informed Mr. Gibson "that he was free to do whatever he wanted." (Id.) Thereafter, Mr. Gibson drove Mrs. Gibson to Norton Community Hospital.

Mrs. Gibson filed this cause of action on August 28, 2000, alleging negligent product design, manufacture, and marketing against R.W. Packaging (R.W.), the maker of Easy Start Charcoal Starter, and, in the alternative, against Wal Mart. Mrs. Gibson further alleges violations of the Federal Hazardous Substances Act (FHSA), 15 U.S.C. § 1261 et seq., the Poison Prevention Packaging Act (PPPA), 15 U.S.C. § 1471 et seq., and the Toxic Substances Control Act (TSCA), 15 U.S.C. § 2601 et seq. Finally, Mrs. Gibson alleges that Wal Mart negligently breached its duty of care to her after the accident occurred.

This case is now before the court on Defendants' Motion for Summary Judgment. All parties have submitted briefs and been heard at oral argument. The case is therefore ripe for judgment.

## II. Analysis

### A. Standard of Review

Summary judgment is appropriate when there is "no genuine issue of material fact," given the parties' burdens of proof at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); see Fed.R.Civ.P. 56(c). In determining whether the moving party has shown that there is no genuine issue of material fact, a court must assess the factual evidence and all inferences to be drawn therefrom in the light most favorable to the non-moving party. See Ross v. Communications Satellite Corp., 759 F.2d 355, 364 (4th Cir.1985).

Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is not "a disfavored procedural shortcut," but an important mechanism for weeding out "claims and defenses [that] have no factual basis." Id. at 327, 106 S.Ct. 2548.

In opposing summary judgment, the nonmoving party must "set forth such facts as would be admissible in evidence." Fed.R.Civ.P. 56(e). Inadmissible hearsay cannot be used to oppose summary judgment. See Greensboro Prof. Fire Fighters Ass'n v. City of Greensboro, 64 F.3d 962, 967 (4th Cir.1995).

Moreover, the court may disregard an affidavit that is inherently inconsistent with the witness' deposition testimony. See Rohrbough v. Wyeth Labs., Inc., 916 F.2d 970, 975–76 (4th Cir.1990); Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir.1984) ("A genuine issue of material fact

is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct.").

## B. *Product Liability Claim*

■ Mrs. Gibson has alleged both negligence and breach of express and implied warranties. (Compl. at ¶ 10, 23.) In order to prevail "[u]nder either the warranty theory or the negligence theory the plaintiff must show, (1) that the goods were unreasonably dangerous either for the use to which they would ordinarily be put or for some other reasonably foreseeable purpose, and (2) that the unreasonably dangerous condition existed when the goods left the defendant's hands." *Logan v. Montgomery Ward & Co.*, 216 Va. 425, 219 S.E.2d 685, 687 (1975). Further, "[i]n determining what constitutes an unreasonably dangerous defect, a court will consider safety standards promulgated by the government or the relevant industry, as well as the reasonable expectations of consumers." *Alevromagiros v. Hechinger Co.*, 993 F.2d 417, 420 (4th Cir.1993). Reasonable consumer expectations can be established through "evidence of actual industry practices, knowledge at the time of other injuries, knowledge of dangers, published literature, and . . . direct evidence of what reasonable purchasers consider defective." *Lemons v. Ryder Truck Rental*, 906 F.Supp. 328, 332–33 (W.D.Va.1995) (citations omitted).

■ Mrs. Gibson has failed to show either that the charcoal lighter fluid was unreasonably dangerous or that the condition existed when it left the defendants' hands. Mrs. Gibson has presented evidence of government standards governing the packaging of charcoal lighter fluid,

specifically, 16 C.F.R. §§ 1700.14 & 1700.15. (See Pl.'s Amendment to Authorities, Docket No. 36.) However, nothing in the evidence indicates that the packaging used by R.W. violates these standards.

Mrs. Gibson also alleges that the product falls below reasonable consumer expectations. She does so by stating in her affidavit that Easy Start Charcoal Starter did not meet *her* expectations, supported by her husband reiterating the same sentiment. (See Mrs. Gibson Aff.; Mr. Gibson Aff.) This court is not surprised that a plaintiff against a manufacturer would assert as much. However, more is required than a plaintiff's personal opinion of a product that allegedly injured her. This court has previously required a factual examination of what society expects or demands from a product. *Lemons*, 906 F.Supp. at 333 (citing *Sexton v. Bell Helmets* 926 F.2d 331, 337 (4th Cir.1991)). Mrs. Gibson's conclusory statement regarding the lighter fluid is insufficient as a matter of law to meet this standard.

The defendants' contend that Mrs. Gibson lacks the requisite expert to prove causation.[1] Mrs. Gibson responds that she in fact does have an expert, Dr. Robinette. Mrs. Gibson further asserts that this expert establishes causation. Reviewing Dr. Robinette's affidavit, the court fails to see how he establishes a defect in the lighter fluid that caused Mrs. Gibson's injuries. Dr. Robinette's affidavit states that plaintiff's ingestion of lighter fluid caused her various injuries, including oral blisters and burning of her upper airway and acute chemical injury to her lungs. (Robinette Aff.) However, this testimony fails to show that these injuries were the result of any defect in the product. In fact, the product

---

1. Defendants cite the case of *Goewey v. U.S.*, 222 Ct.Cl. 104, 612 F.2d 539 (1979) This is an unpublished opinion no copy of which has been attached. See 4th Cir. R. 28(b). None-

theless, Mrs. Gibson concedes that, "Expert testimony is usually necessary in products liability cases to establish defectiveness or dangerousness of the product and causation."

label itself warns of such dangers. (See Ex. C, Defs.' Mem. in Supp. of Sum. J.)

Finally, Mrs. Gibson fails to prove that the accident was due to an unreasonably dangerous condition that existed when the product left the defendants' hands. Mrs. Gibson does not know how long the container of lighter fluid was on the shelf prior to her incident, nor does she know how the container came to be in the state in which she discovered it. The law of Virginia does not allow recovery when the plaintiff's theory is conjectural. *See Logan, supra.* Rather, the plaintiff must affirmatively prove her case, if only by excluding all other explanations. This Mrs. Gibson fails to do.

In sum, Mrs. Gibson fails to prove that the lighter fluid is an unreasonably dangerous product, or that her injuries were due to an unreasonably dangerous condition created by one or both of the defendants. Therefore, summary judgment for the defendants on the issue of product liability is granted.

### C. *Federal Statutory Claims*

■ Mrs. Gibson has also alleged that the defendants violated several federal statutes governing the production and packaging of charcoal lighter fluid. Specifically, Mrs. Gibson alleges violations of the Federal Hazardous Substances Act, 15 U.S.C. § 1261 *et seq.,* the Poison Prevention Packaging Act, 15 U.S.C. § 1471 *et seq.,* and the Toxic Substances Control Act, 15 U.S.C. § 2601 *et seq.* R.W. and Wal Mart contend that these statutes do not grant a private right of action, and therefore Mrs. Gibson's claims under them should be dismissed for failure to state a claim.

The Fourth Circuit has yet to determine the issue of whether the FHSA and PPPA grant private rights of action. However, this has been addressed by the Second Circuit in *Riegel Textile Corp. v. Celanese Corp.,* 649 F.2d 894 (2nd Cir.1981). The *Riegel* court undertook an in-depth analysis of the FHSA under the four factors of *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), which promulgated a four pronged test to determine if a statutory structure provides an implicit private remedy where one is not explicitly stated. Those factors are: 1) whether the statute creates a federal right in favor of the plaintiff, 2) indications of legislative intent to create a private remedy, 3) consistency with the purposes of the underlying legislative scheme, and 4) federalism concerns, i.e., is the area of law traditionally relegated to the states and of such little concern to the federal government that implying an action based on federal law would be inappropriate. *Riegel,* 649 F.2d at 897. The court went on to stress "that courts should be reluctant to imply private rights of action" and that the "*Cort* factors are not necessarily accorded equal weight." *Id.*

The *Riegel* court concluded, after an extensive analysis, that the FHSA did not grant a private right of action. The court determined that "the emphasis of the FHSA ... was preventive, not remedial." 649 F.2d at 901. Further, "[t]he Acts focus on the prevention of injury, and not the recompense of injury after it has occurred." *Id.*

A court in the Northern District of New York applying *Riegel* extended its holding to include the PPPA. In *Doane v. Metal Bluing Prods., Inc.* 568 F.Supp. 744 (N.D.N.Y.1983), the court held that enforcement of the PPPA "is governed by the enforcement sections of the FHSA, which incorporates the PPPA by reference. The Second Circuit's analysis of the availability of a private right of action for one injured by a violation of the FHSA is thus fully applicable with respect to a claim under the PPPA." 568 F.Supp. at 746.

This court finds the reasoning of the Second Circuit persuasive and hereby adopts the holdings of that court. The FHSA provides for no private right of action, and, by extension, neither does the PPPA. Enforcement of these Acts has been given to the Consumer Product Safety Commission (CPSC) in order to prevent injury. State tort law provides adequate redress of violations without the creation of an additional federal statutory cause of action. For these reasons, Mrs. Gibson's FHSA and PPPA claims are dismissed.

As earlier mentioned, Mrs. Gibson has also alleged violations of the Toxic Substances Control Act. The defense replies that the TSCA was enacted "to address the manufacture, processing, disposal, distribution and treatment of PCB's (poly-chlorinated biphenyls)." (Defs.' Mem. in Supp. of Sum. J. at 12–13.) This is only partially true. The TSCA addresses the manufacture, use, and disposal of several toxic substances, PCB's included among them, but also asbestos and others. The TSCA is primarily oriented to environmental protection with the Environmental Protection Agency (EPA) vested with the responsibility of enacting and enforcing regulatory provisions related to the Act. See 15 U.S.C. § 2602 (defining "Administrator" as the Administrator of the EPA); 15 U.S.C. § 2605 (authorizing the EPA to adopt regulations necessary to protect the environment from toxic chemicals); 15 U.S.C. § 2606 (authorizing the commencement of civil action by the EPA to enforce provisions of the Act). Given the nature of the TSCA, this court fails to see where this Act applies under the facts of this case. No environmental threat has been identified, and no environmental threat regarding the manufacture or disposal of the lighter fluid has been named.[2]

Therefore, any claim under the TSCA is dismissed.

### D. *Premises Liability Claim*

Mrs. Gibson further alleges that Wal Mart was negligent in its duty to her by failing to ensure her safety while in the store. Further, Mrs. Gibson alleges Wal Mart was negligent in its treatment of her following the accident.

Rules related to premises liability are well settled in Virginia. A store-owner owes an invitee of the business the duty to exercise ordinary care. *Winn–Dixie Stores v. Parker*, 240 Va. 180, 396 S.E.2d 649, 650 (1990). This requires a store-owner to maintain his facility in a reasonably safe condition, with warnings to the invitee of any unsafe conditions known to the store-owner, or which, in the exercise of reasonable care, should be known to the store owner. *Id.* Further, "constructive knowledge or notice of a defective condition of a premise or a fixture may be shown by evidence that the defect was noticeable and had existed for a sufficient length of time to charge its possessor with notice of its defective condition." *Grim v. Rahe, Inc.*, 246 Va. 239, 434 S.E.2d 888, 890 (1993).

In the case at bar, Mrs. Gibson has been unable to show that Wal Mart had any notice of any defective condition that existed with the container of charcoal lighter fluid. In fact, Mrs. Gibson admits she does not know how long the lighter fluid was on the shelf. (See Pl.'s Resp. to Defs.' Req. for Admis.) The merchandise was placed in the store to be readily accessible to customers. It is therefore unknown who opened or damaged the can of lighter fluid. Therefore, Mrs. Gibson's claim must fail.

---

**2.** Indeed, the plaintiff fails to mention either in their brief or at oral argument any of the Acts alleged to have been violated in their Complaint.

■ Mrs. Gibson has also alleged that Wal Mart breached its duty to her after the accident occurred. Mrs. Gibson contended at oral argument that when Wal Mart began to administer some medical treatment, it assumed a continuing duty to provide medical treatment, and that this duty was breached by not arranging transport for Mrs. Gibson to the hospital. She has further argued on brief for the extension of the rescue and emergency doctrine to cover situations such as this. Mrs. Gibson has not offered any case law to support such an extension in either argument.

Wal Mart has argued that its duty to provide medical assistance, if any, ended when Mrs. Gibson's husband arrived, as she was in the care of competent adult. Wal Mart cites the unpublished case of *Pielke v. Home Depot U.S.A., Inc.,* 155 F.3d 560, 1998 U.S.App. LEXIS 16309 (4th Cir. July 15, 1998), in support of this proposition.

■ Virginia has not expanded to store-owners any duty to provide medical treatment to those injured on their premises. This court, as a federal court, is loathe to extend state tort law into areas unaddressed by the Virginia Supreme Court, and therefore declines so to do.

■ Further, the duty of any person is to act reasonably under the circumstances. Lewis, the management member present at the scene, contacted the Poison Control Center and followed their instructions. This court is unable to determine that these actions were in any way unreasonable. Further, Mrs. Gibson was in the presence and care of her husband. Both Mrs. and Mr. Gibson admit in depositions that they were not prevented from leaving at any time. (Mrs. Gibson Dep. at 75; Mr. Gibson Dep. at 12–13.) Under these circumstances, Wal Mart conducted itself in a reasonable manner. Therefore, summary judgment as to any premises liability claims is granted.

## III.   Conclusion

For the foregoing reasons, Defendant's Motion for Summary Judgment is hereby **GRANTED**.